JOSEPH MONTOUR

*v.*

SAMUEL H. PURDY et al.

A denial of "each and every *material* allegation" of a complaint is insufficient.

The second and principal defense set up in this action was a title under a guardian's sale. The notice of sale was alleged to have been published "for three successive weeks *previous*" to the day appointed for sale. *Held:* insufficient.

Before sale the guardian took an oath as follows: "In conducting the sale of the real estate of said minors under the order of the Probate Court, that I will in all respects conduct the same according to law, and for the benefit and best interest of the wards. *Held:* sufficient.

*Held:* That the words, "the guardian was licensed to make the sale by a probate court of competent jurisdiction," in Sub-division 1 of Sec. 23, page 416, Pub. Stat., signify that "the guardian was licensed to make the sale by the Probate Court of the county in which he was appointed;" and that in a collateral attack upon a guardian's sale, made under the chapter in which the section is found, it is immaterial whether the steps pointed out in the statute, as preliminary to the granting of license, have been followed or not.

*Held:* That the lien created by the act entitled "An act to protect purchasers of real estate at executors', administrators', or guardians' sales," approved March 3, 1864, furnishes no defense to an action of ejectment.

This action was brought in the District Court for Goodhue county, to recover the possession of certain real estate in that county. The complaint alleges title in plaintiff; that the defendants are in possession, claiming title, and that they wrongfully withhold possession from the plaintiff.

The answer denies "each and every *material* allegation in the complaint." It also alleges title in the defendants, de-

rived from the plaintiff while an infant, by virtue of a guardian's sale, and claims in case the said sale should be held invalid, a lien for the purchase money and taxes paid.   To this answer the defendant demurred, specifying three grounds of demurrer, as follows :   " 1.  It contains no defense to the action.   2.  It affirms the title of the lands to have been in plaintiff, and shows that such title never passed out of him to the parties under whom defendants claim.   3.  It states no facts upon which the defendants can establish a lien for either the purchase money or taxes alleged to have been paid."   The plaintiff claimed that the title set up by the defendants in their answer was invalid and insufficient—first, because it did not appear that the guardian was licensed to make the sale by a probate court of competent jurisdiction; · second, because it did not appear that the guardian took the oath required by law ; and third, because the guardian did not give notice of the time and place of sale as required by law.   The allegations of the answer in these respects, so far as material to the points decided, were substantially as follows :   That the guardian was appointed by the Probate Court of Ramsey county ; that afterwards, the " guardian, as such, filed his petition in said Probate Court, praying, for reasons therein set forth, that he be licensed to sell the said real estate of his said ward ; that the said Joseph Montour, and the next of kin of the said Joseph Montour, to-wit : ———— ————, having filed in the said Probate Court their assent and consent, in writing, to the granting of said license, thereupon, " by the consideration of said court, in the premises," license was granted, etc.   The oath alleged to have been taken was " in conducting the sale of the real estate of said minors, under the order of the Probate Court, that I will, in all respects, conduct the same according to law, and for the benefit and best interest of the wards."   The oath appears by the answer to have been taken June 19, 1857, the day on which, it is alleged, the license was granted.   In relation to the notice of the time and place of

sale, the allegations, as modified by the exhibits attached to the answer, and to which it refers, are that the notice was published "for three successive weeks *previous*" to the day appointed for sale; that the notice was posted at (specifying three places in Goodhue county) "three of the most public places in said county for three weeks *previous* to the day of sale mentioned in said notice."

The demurrer was overruled by the court below, and the plaintiff appeals from the order overruling the same, to this Court.

BRISBIN & WARNER, for appellants.

The complaint was in the usual form and sufficient. 5 Minn. R. 178; 8 Ib. 257.

The first defense consists of a denial of each and every *material* allegation of the complaint, and is bad as a denial.

The second defense is bad, because it admits that the plaintiff once owned the premises, and fails to show a valid title from him by office grant—that is, it shows that the grant was made for the purpose of *maintaining and educating* the plaintiff, and does not show such a compliance with Chapter 38 of the Compiled Statutes, as renders the guardian's sale valid or sufficient to divest plaintiff's title.

*The validity of all office grants, depends upon a strict compliance with all the provisions of the statute, by virtue of which they are made, and if such statutes are not strictly followed, the grant is irregular and void.* Such is the general rule of law declared from all the cases in regard to tax deeds, sheriff's deeds, executors' deeds, administrators' deeds, guardians' deeds, proceedings to condemn and take land for public or *quasi* public uses, as for roads, streets, &c., forfeitures, and all transfers of real estate by virtue of statutes, and without the act of the owner. Washburn on Real Property, pp. 555, 556, 2 Vol; Willard on Real Estate and Convey-

ancing, pp. 445 to 458; *Davison v. Gill*, 1 East. 64; *Atkins v. Kinnan*, 20 Wend. 241; *Ford v. Walsworth*, 15 Wend. 449; *Palmer v. Oakley*, 2 Doug. Mich. 433; *Sibley v. Waffle*, 16 N. Y. 180; *Corwin v. Merritt*, 3 Barb. 341; *Gregory v. McPherson*, 13 Cal. 562; *Dakin v. Hudson*, 6 Cowen, 221; *Pinney v. Fridley*, 9 Minn. 34.

By the common law, a father or mother, as guardians or not, had no further power over the estate of the ward, than to receive the rents and profits thereof, and he was bound to maintain the infant out of his own property, and the English Court of Chancery had no power to direct a *sale* of the infant's *real estate* for his maintainance or education. Kent's Com., 2 Vol., titles "Parent and Child," "Guardian and Ward," and "Infants;" *Taylor v. Phillips*, 2 Ves. 23; *Russell v. Russell*, 1 Molloy, 525, 528.

Such power extended only to his personal estate and the rents and profits of his lands; and when such power was conferred by act of the Legislature upon the Court of Chancery in the State of New York in 1814, it was held that such statute was in derogation of the ancient law, and that the jurisdiction of *that* court in such cases rested altogether upon the statute. *Rogers v. Dill*, 6 Hill, 415; Willard on Real Estate, p. 447.

The answer shows that this sale was made for the purpose of maintainance and education. The guardian is no where authorized to make a sale for *that object*, except by Chapter 38 Compiled Statutes; his powers in that behalf rest solely upon a statute in degrogation of the common law.

Section 1 of Chapter 38, provides substantially, that when the income of a ward is insufficient to maintain or educate him, his guardian *"may sell his real estate for that purpose, upon obtaining a license therefor and proceeding therein as provided in this chapter."*

His *power to sell*, therefore, *does not vest* until the guardian has obtained the license of a *judicial officer*, and has also con-

formed to the statute in his proceedings in that behalf. In this case no valid license was obtained, and the proceedings did not conform to the statute.

Our Probate Courts, under the organic act, had no original or general jurisdiction, but all its powers depended solely upon the statutes of the assembly, and, therefore, such courts, then, were upon a par with the Surrogate's Court of the State of New York, and the uniform decisions of that State are to the effect that the Surrogate's Courts of that State are courts of inferior and limited jurisdiction; its records must show jurisdiction, and its powers depends altogether upon the statutes, and its proceedings are valid or void, accordingly as they conform to the statutes or not. *Sibley v. Waffle*, 16 N. Y. 180, 185 ; *Ford v. Walsworth*, 15 Wend. 449 ; *Corwin v. Merritt*, 3 Barb. 341 ; *Atkins v. Kinnan*, 20 Wend. 241 ; *People v. Corlies*, 1 Sandf. 228 ; *People v. Burns*, 12 Wend. 492, 494 ; *Sheldon v. Wright*, 5 N. Y. 497.

Section 1, above cited, requires the guardian to obtain the license from *such* a court, and from the above authorities it is clear that such license is void, unless it further appears that the officer had competent authority to issue it.

Section 6 provides that, *in order to obtain* a license for *such* sale, the guardian *shall* present to the Probate Court of the county in which he was appointed guardian, a petition therefor, setting forth the condition of the estate of his ward, and the facts and circumstances on which the petition is founded, tending to show the necessity or expediency of a sale, *which petition shall be verified by the oath of the petitioner.*

Section 7 provides, that if it shall appear from *such* petition that it is necessary, or would be beneficial to the ward that such real estate, or some part of it, should be sold, *the court shall thereupon make an order* directing the next of kin of the ward, and all persons interested in the estate, to appear before the court, at a time and place therein to be specified, not less than four, nor more than eight weeks from the time of making

such order, to show cause why a license should not be granted for the sale of such estate.

Section 8 provides that a copy of such order *shall* be served on the next of kin of such ward, and all persons interested in the estate, at least fourteen days before the hearing of the petition, or *shall* be published at least three successive weeks in such newspaper circulating in the county as the court shall specify in such order.

Section 10 provides that the Judge of Probate, *at the time and place appointed in such order*, or at such other time as the hearing shall be adjourned to, *upon proof of due service of the order*, * * * shall hear and examine the proofs and allegations of the petitioners, and of the next of kin, and of all other persons interested in the estate, who shall think proper to oppose the application.

Section 12 provides that if, after full examination, it shall appear to the court, either that it is necessary, or that it would be for the benefit of the ward, that the real estate, or some part, should be sold, *such court may grant a license therefor*, specifying therein whether the sale is to be made for the maintainance of the ward and his family, or for the education of the ward or his children, or in order that the proceeds may be put out or invested as aforesaid.

In this case, the answer does not show that any *such* petition was ever *presented or verified in any way, yet the presentation of such a petition, so verified, was a condition precedent to any action by the Probate Judge.*

On this point, the case of *Sibley v. Waffle*, 16 N. Y. 180, is conclusive. The Court of Appeals of New York held in that case that a petition duly verified, and setting forth certain facts, *must* be presented to the court to give it jurisdiction for any purpose, p. 185, 187; that bench concurred on *that ground.*

But assuming that such a verified petition had been duly presented, that did not authorize the court to do more than

set a time and place for hearing, distant not less than four weeks, and to issue the prescribed notice—his powers are derived from this statute ; and it gives him power to act, step by step, *when*, and when only, the prior steps have been properly taken. The order for hearing must rest upon a proper petition, and, according to section 10, the hearing rests upon the issuance and service of such order, and, by section 12, the power to grant a license depends upon such a hearing. *Sibley v. Waffle*, 16 N. Y. p. 190.

The provisions of this chapter produce publicity and deliberation, and when followed, draw attention to the proceedings, and tend to close the door to fraud, which thrives upon *secrecy* and dispatch. The answer here shows that the guardian was appointed and licensed to sell *at one sitting of the court*, Sections 7, 8 and 10 being entirely ignored. The inference is irresistible, that in this case the guardian was appointed, not for the real purpose of *guarding* the ward and his estate, but for the purpose of stripping him of his inheritance; and if a license can be obtained by such proceedings, it is evident with what facility infants can be despoiled of their property, and in what a helpless situation the Legislature has placed them, in contravention to the spirit and policy of the common law. *French v. Hoyt*, 6 N. H. 370, was a case like the one at bar in essential particulars.

*Second.* As has been shown, this power of a guardian to sell his ward's real estate for any purpose, is a statutory power depending upon two conditions precedent; and admitting now that the first as to the license appears, yet *that* in no way excuses the absence of the other—his power to sell nevertheless depends upon his proceeding as prescribed by Chapter 38, see Section 1, p. 414. Therefore, even if the proper valid license is procured, yet no power to sell is thereby conferred; or rather, it only confers power to sell as prescribed by statute; and if the subsequent proceedings of the guardian before sale do not conform to the statute, the sale is void for want of power to put it up at auction.

The first requirement of the statute after a license is the proper oath; it must be taken *before fixing on the time and place of sale.* The law demands the sanction of an oath to those acts, otherwise a time and place may be fixed which would practically secure the absence of all competitions. The answer does not show that the oath was taken *before fixing* on the time and place of sale—the taking of such an oath is a condition precedent to any power to fix such time and place of sale.

The statute requires the guardian next to give three weeks notice of *that* time and place. Sec. 15, Chap. 38; Sec. 16, Chap. 39.

We contend, therefore, that the guardian had no power to sell—

*First.* Because he had no valid license; it not having been granted by a Probate Court having competent authority. [The petition was not verified and did not set forth the facts required by statute—no time and place of hearing was set four weeks distant, and no notice thereof was given in any way.]

*Second.* Because the proper oath was not taken at the proper time.

*Third.* Because due notice was not given of the time and place where the sale would be made.

*Fourth.* Because the answer does not show that the sale is within the healing operations of Section 23, Chapter 38, which is a kind of statute of *Jeofails,* but on the contrary, the answer shows that the very requisites of that statute are wanting.

The answer does not show that the license was granted by a probate court *of competent jurisdiction.*

The phrase *competent jurisdiction* means, jurisdiction competent, sufficient, or conferring the legal capacity to hear and determine the matter submitted—see Webster's Dictionary, "Competent." The term *jurisdiction* in this phrase, refers to the *general scope* of the powers of the court, and the term

*competent* implies the *capacity* to *exercise those powers in any particular case.* A court may have jurisdiction over a matter without the power to hear and determine it. Our district judges have jurisdiction touching insolvency proceedings under the statute, but they have not, *therefore,* power to grant a discharge in any particular case. To render such jurisdiction *competent* to that end, the provisions of the statute must be strictly pursued. See cases above cited.

So, in the case at bar, the probate court had jurisdiction thereabouts, but not jurisdiction *competent* to grant the license, because the provisions of the statute in relation thereto were not strictly followed.

The term competent was evidently used by the Legislature in this connection *ex-industria,* and it must be given force in addition to the term jurisdiction alone. The phrase competent jurisdiction must be held to mean *more* than the term jurisdiction alone, else we do violence to the act. The court cannot ignore, but must so construe a statute as to give effect to every word, especially when that word is part of a phrase familiar to legal writers and courts.

As to when the jurisdiction of our *Territorial* Probate Court was competent or sufficient, or conferred the legal capacity to determine cases like this, we refer to the following authorities: *French v. Hoyt,* 6 New Hampshire, 370; *Sibley v. Waffle,* 16 N. Y., 180, 185, 190; *Gregory v. McPherson,* 13 Cal. 562, 576, &c.; *Palmer v. Oakley,* 2 Doug. Mich. R., 433; *Atkins v. Kinnan,* 20 Wend., 241; *Litzman v. Pacquette,* 13 Wis. 291; *Borden v. Fitch,* 15 John., 121; *Ford v. Walsworth,* 15 Wend., 449.

The first of the above cases is very similar to the one at bar, and the court expressly state in its opinion that a license to sell, granted to a guardian, without the statutory order for hearing, and notice, would be void, and the reasons of such opinion given, are cogent and sufficient. The second case cited proceeds upon the same principle.

We have already fully discussed the defect in regard to the oath and notice of sale.

It is clear, that Section 23 of Chapter 38, does not aid this sale, for the very essentials prescribed by that section, are wanting in this case. *Dakin v. Hudson*, 6 Cowen, 221.

The third defense proceeds upon the assumption that the sale was void. If void, the *common law* gave the purchaser no lien on the premises for the price he may have paid to the guardian; his remedy was exclusively against the agent who acted without authority. An agent who can not sell, can not by an attempted sale create a lien on the land. Prior, therefore, to the act of 1864, the purchaser could not, at law or in equity, charge the infant or his estate, without showing that the money was actually applied to his use in purchase of *necessaries.*

If this was so, the Legislature could not, in 1864, create a new obligation, based upon these acts in 1857. If the Legislature, by act, has authorized the construction of a road, and it is built, but not in conformity to the provisions of the act, it is very clear the Legislature could not, by subsequent legislation, create any obligation to pay for it. According *to best authority, the scope of legislative power does not embrace the right or authority to* create new obligations or impose new duties, or attach new disabilities, in respect to transactions of the past. *The Society, &c. v. Wheller*, 2 Gallis, 139; Smith's Com. on Const. Sec. 149 *et seq.* Sec. 379; *Dash v. Van Cluck*, 7 John., 477; Kent's Com. 2 Vol., 2d Ed., p. 455 *et seq.*

The act of 1864 can not be given a *retroactive effect;* and by virtue of it no lien for purchase money is *created,* and without such lien payment of taxes gives no lien, especially since the defendants in possession were bound in equity to keep down the taxes while in receipt of the rents and profits which it will be noticed are not claimed by the plaintiff in this case; as to whether plaintiff ought to pay for improvement, if any were made in good faith, is a question to be met when properly presented by the pleadings.

W. W. PHELPS, and WILDER & WILLISTON, for respondents.

*First.* By the defendants' first defense the plaintiff's entire cause of action is denied and put at issue, and under this defense, without going farther, the demurrer should have been overruled.

The case of *Derby & Day v. Gallup*, 5 Minn., p. 119, cited by appellant, is not in point. The two defenses in that case were held by the court to be, as to the taking, inconsistent, and that one or the other of such defenses was not and could not be true.

In the present case both defenses are consistent, and both are true. In actions of ejectment the plaintiff must rely upon his own absolute, now existing title.

The defenses in the action may be cumulative, but they are not inconsistent with each other, nor are they unauthorized by the practice under our code. In the case of *Derby & Day v. Gallup*, referred to, it is expressly decided "that the allegation that the property belonged to Griggs, is not in conflict with the previous denials."

*Second.* The second defense is equally decisive of the case, and fully sustains the order of the judge in overruling the demurrer.

1. Respondents contend that the guardian's sale is valid. If the same is, either in fact, or by the statute, valid, or if the appellant has no right to contest its validity, then, in either event, the case is disposed of, and the order of the District Judge will be sustained.

Section 23, Comp. Stat., page 416, provides when a ward may contest the validity of a sale, and what shall constitute a valid sale. If the five statute requirements appear to have been complied with, then this sale must stand as valid, and the appellant takes nothing by this action, for, in such cases, the statute provides, 1st, that neither " the ward, or any person claiming under him shall contest the validity of the sale,"

and 2d, that "the same shall not be avoided on account of any irregularity in the proceedings," thus prohibiting the right to bring or maintain this action.

2.   Compliance with the second and fifth statute requirements is conceded.

3.   It is objected that the oath was not given before fixing the time and place of sale.   It was taken the very day the license was granted.

4.   It is objected that section 16, chapter 39, was not complied with.

As to the two last objections, the record is our only reply.

5.   Whether the first requirement has been complied with seems to be the point contested, and upon the assumption that it has not been, appellant mainly relies.   This requirement is, that the " guardian be licensed to make the sale by Probate Court of competent jurisdiction."   The question comes upon the construction of the words, " by a Probate Court of competent jurisdiction."   The words are most general, and may be rendered, " any Probate Court possessed of the authority to exercise jurisdiction over the person and estate of a minor." A clear and perfect definition of these words seems to be, a Probate Court, which, from its *locality*, and the *residence* of the minor, and the situation of *his* property, is *capable* of taking and exercising jurisdiction of both the person and estate of the minor.   If this construction is correct, looking to the answer for the facts, further inquiry is unnecessary, and this prerequisite is established.

6.   But in this case, respondents still further claim that the right and proper court actually acquired jurisdiction of the person and estate by granting letters of guardianship, and of the question of granting the license by receiving and acting upon the petition praying for such sale, and its judicial action thereon.   The residence of the minor and his father and guardian in Ramsey county; the granting of letters of guardianship, and the making and receiving the petition for a sale,

gives full and complete jurisdiction in the premises. Not only the right court to entertain, but the sole and exclusive court to have jurisdiction, by the performance of judicial acts, has acquired, by proper initiative steps, the right to decide as to the granting of license. The right court, and the only court invested with exclusive jurisdiction, has entered upon and proceeded to exercise such jurisdiction, and all errors in its exercise are errors of judgment, judicial errors, appealable and reversible, perhaps, in the proper form, but in no wise jurisdictional questions, nor can such errors be relied upon to avoid the sale. *Hard v. Shipman*, 6 Barb. pages 629–30–31 ; *Grignon v. Astor*, 2 How. (U. S.) page 310; 2 Pet. (U. S.) page 162; 10 Ib. page 449; *Perkins v. Fairfield*, 11 Mass. pages 227 and 512; *McPherson v. Cunliff*, 11 Serg. & Rawle, (Penn.) page 429 ; Phillips Ev. Cowen & Hill's Notes, pages 861–3, and cases there referred to; 1 Conn. page 467.

7. This is not a proceeding in error to reverse an order of sale upon *certiorari* or by appeal, or to correct and review the alleged erroneous action of the Probate Court of Ramsey county, but, on the contrary, the appellant ignores the Probate Court of that county and its judicial action altogether, and utterly sets at naught the record of its judicial proceedings ; everything done by it is treated as a nullity ; and so it must be, since to entitle the appellant to recover in his action, he must show from the records of the court, as given in the answer, that the guardian's sale therein set forth was absolutely void, and outside of its jurisdiction.

It is not permitted to impeach judicial proceedings collaterally by a showing less comprehensive, or by an objection that does not go fatally to the court's jurisdiction. See cases cited above in 6th sub-division.

8. This license having been granted by the Probate Court of Ramsey county, must held valid in all courts. The Probate Judge had exclusive jurisdiction over the person and sub-

ject matter, and his judgment is not open to collateral impeachment.   See cases cited above.   *Colton v. Ross*, 2 Paige, page 396; 3 Barb. Ch. R. page 477; 2 Edw. page 259, 4 Paige, page 623; 1 Pick. page 535; 12 Wend. page 533; 4 Ib. page 436; 2 Seld. 190; 4 Denio, pages 85 and 416.

9.   The sale brought in question in this case is a proceeding *in rem*, not *in personam*.   The minority of the ward and his residence confers jurisdiction.   On a proceeding to sell the real estate of a minor, there are no adverse parties.   The jurisdiction of the court flows from the power of the court over the ward and his estate, without reference to the parties who may have interest therein; and it is presumed after the court has passed upon the question of license, that every necessary perliminary step has been taken.   2 Howard U. S. Rep., 319; 7 Barb. 39; 10 Peters, 261.

10.   The license having been granted is conclusive upon appellant.   He was before the court, by his guardian, the legal protector of his rights, asking and obtaining from the court the doing of what he now seeks to take advantage—in fact, taking advantage of his own wrong.

*Second.*   The appellant makes objection to this sale on the ground that Secs. 7 and 8, Comp. Stat., page 415, have not been complied with.

1.   We contend that Secs. 7 and 8 have been complied with. The object of the order provided for in these sections, is to give notice to the next of kin, and all persons interested in the estate of the ward, and bring them before the court by an order to show cause.   The next of kin and heir at law, and the brothers and sisters in person and by guardian, appeared before the court and waived such notice, and consented to the sale.

2.   Even if this proceeding is irregular, the appellant has no right to urge the objection.   It is not one of the causes alleged in Sec. 23.   Besides, Secs. 7 and 8 are not for his pro-

tection. It is to protect the next of kin and those interested in the estate, and not the ward.

The ward moves the court for this very license, through his guardian, secures for his own benefit the presence of the parties upon whom the notice is to be served, and seeks now to vitiate his own acts, because a privilege was not so amply granted another as he thinks right.

This was an irregularity, if one, in which the ward has no concern. He cannot now, nor could he then complain, for no wrong is done him, or right of his invaded, or loss sustained by him.

3. The probate court of Ramsey county having jurisdiction of the person as well as the subject matter, and the ward, by his guardian, at each succeeding step appearing before the court, the license is conclusive upon him. Sec. 23, Comp. Stat. page 416; *Gardner v. Buckbee*, 3 Cowan, 120; 4 Paige, 623: 9 Wend. 287; 4 Cowan, 559; 6 Wend. 486.

The error complained of is, at most, only a judicial error, or error of judgment, and after the license was issued, the sale cannot be impeached collaterally. See cases above cited.

4. The presumption of law is, that officers acting officially, have done their whole duty, and this presumption arises in regard to any fact connected with the proceedings, which does not go to the jurisdiction. 1 Hill, 130; 3 Barb. 341; 4 Ib. 139; 12 Wend. 533; 20 Ib. 242.

The errors complained of in this case were not the fault of the purchaser, nor of the guardian, nor of the ward, represented by the guardian, but of the judge solely, without fraud or pretence of fraud, mistake or injury, by, to, and by the acts of either purchaser, guardian or judge, and, if erroneous, are simply mistakes of judgment, which, if brought in review upon appeal, would not have entitled the appellant to any redress, and certainly cannot be assailed collaterally.

5. The objections made to the second and fifth requirements, respondents claim are not well taken, as matters of fact,

the facts showing that appellant's claim is unsustained by the record; and, under the legal principles announced in cases above cited, are not in any event material, and will not affect the sale or the title acquired by the grantors and privies of respondents, or respondents' title.

6.   The claim of appellant, if admitted, renders nugatory Sec. 23, Comp. Stat. page 416.   For if every preliminary step must, as a matter of fact and law, be complied with, to enable the probate court to acquire jurisdiction, then there never can be irregularities or omissions to cure, and the curative purpose of the statute is wholly defeated.

*Third.*   It is eminently right and proper that such a sale as this should be protected.

1.   Sound policy should induce courts to protect the rights of *bona fide* purchasers, in cases like this, even in the absence of a curative statute; and such is the decision of the Supreme Court of the United States, in the cases cited from 2 How. 319, and 2 Pet. 168.

In new communities, where land is cheap, and made valuable mainly by improvements, and is so frequently and often the subject of sale and transfer, the necessity of such a rule becomes imperative and obligatory upon the conscience of courts.

*Fourth.*   In any event, and whatever view the court may entertain of the legal principles above discussed, respondents claim a lien for purchase money and taxes actually paid upon said land, as bona fide purchasers and occupants thereof, under the provisions of an act of the Legislature, approved March 3, 1864.   Sess. Laws, 1864, Ch. 45, p. 94.

1.   Appellant, by admitting the *third* defense, admits the facts, which under the law above referred to, create a lien in favor of respondents, for purchase money and taxes.   This is a valuable right, which respondents are entitled to have enforced by decree, requiring further and additional action of

the court. If any of the defenses plead are good, and raise issues to be disposed of, the demurrer must be overruled.

2. The lien in this case is accompanied by possession, and is designed as the means of protecting such possession and payment, or tender of payment, of the money paid out, and by said law made a lien, and is necessary to entitle the appellant to the possession of the land in suit, which possession is the sole object of this action.

3. If the above two points are not well taken, it is yet clearly the right of respondents to have their lien under this law established in this action, and enforced by a decree of the court.

4. This right cannot be defeated or postponed, unless said law is inoperative and void. The objection is, that the law is retrospective in its operations. Such statutes are held valid, when clearly just and reasonable, and conducive to the general welfare, even though they might operate upon existing rights, as for instance a statute to confirm a sale of lands defectively made, or make valid a void sale. 3 Story Com. on Constitution, 267; 4 Conn. 209; 2 Peters, U. S. 627 and 380; 8 Ib. 88.

The stronger equity of this case, which simply creates a lien to pay back to the *bona fide* purchasers, the money by them actually paid to and received by appellant for the land sought to be recovered, will not induce the court to relax this well settled rule in this case.

5. This law does not impair the obligation of contracts, but on the contrary, sustains and enforces an equitable and vested right on the part of a *bona fide* purchaser, upon the failure of legal title to recover the purchase money from the seller, and which was actually paid by the purchaser and received by the seller.

*By the Court*—Berry, J.—The denial of "each and every *material* allegation of the complaint" in this case, will not do. Whether a denial be general, or specific, there should be no room for mistake as to what is denied, and what is admitted. The advantage of a verification of pleadings will be, in a great degree, lost by any other construction. Nor must parties be permitted to escape the consequences of perjury, by claiming that such and such allegations, (which were material and denied,) were regarded by them as immaterial, and so there was no corrupt intent. The principal question in this case relates to the guardian's sale, set up in the second defense. If that sale was invalid as pleaded, then the demurrer was well taken. It is clearly the theory of our statute, that the proceedings of a court of probate, in relation to guardian's sales, may be overhauled in another way than by bringing them up for review by direct appeal to the District Court. Though a sale may have been authorized and confirmed by a probate court, it may be attacked in an action in the nature of ejectment brought by the ward or his representatives, against the purchaser or his representatives, being the tenant in possession. The grounds of this attack are specified in the statute. Every irregularity in the proceedings is not fatal, but *certain* omissions are fatal, and may be taken advantage of in an action like the present, and the doings of the probate court, in that way, collaterally called in question. Section 23, page 416, Pub. Stat., provides as follows: "In case of an action relating to any estate sold by a guardian under the provisions of this chapter, in which the ward, or any person claiming under him, shall contest the validity of the sale, the same shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

"1. That the guardian was licensed to make the sale by a probate court of competent jurisdiction.

"2. That he gave a bond which was approved by the judge of probate, in case any bond was required by the court upon granting the license.

"3. That he took the oath prescribed in this chapter.

"4. That he gave notice of the time and place of sale, as prescribed by law; and,

"5. That the premises were sold accordingly, by public auction, and are held by one who purchased them in good faith."

The objects for which a sale may be avoided, are thus pointed out in the statute. The regulations upon this subject are matters of express enactment, so that cases like that of *Grignon's Lessees v. Astor*, 2 Howard, (U. S.,) have comparatively little application. Whatever presumptions resting upon considerations of public policy, or upon any other foundation, are allowed in behalf of the validity of the proceedings of probate courts, they cannot be permitted to overcome plain and express provisions of statute. If it turns out upon examination, that the sale in question in this action, lacks any of the requisites prescribed in Sec. 23, it must fall, no matter what arguments, *ab inconvenienti* may be urged against such determination. On the other hand, if none of these requisites is wanting, the sale must stand, whatever else is wanting. The three points in which it is claimed by the appellant that this sale does not appear, by the answer demurred to, to be regular, are those referred to in the first, third, and fourth subdivisions of section 23, viz: as to the license, the guardian's oath, and the notice of the time and place of sale.

First, as to the notice of the time and place of sale, the statute, section 15, page 415, referring to section 16, page 419, Pub. Stat., requires such notice to be published in a newspaper "for three weeks successively next before such sale." The allegation of the answer on this head, as qualified by the exhibit to which it refers is, that the notice was published " for three successive weeks *previous* " to the day appointed for

sale, and the same allegation is made as to the notice of adjournment. This is not giving notice, (in the language of subdivision 4, of section 23, before cited,) "of the time and place of sale as prescribed by law." The allegations as to posting notice are too obviously defective to require comment.

Second, as to the oath, the statute, Sec. 14, page 415, Pub. Stat., referring to Sec. 48, page 423, and Sec. 22, page 420, Pub. Stat., requires the guardian, before fixing on the time and place of sale, "to take and subscribe an oath *in substance*, that in disposing of the real estate which he is licensed to sell, he will exert his best endeavors to dispose of the same in such manner as will be most for the advantage of all persons interested." The allegation of the defense is, that the oath taken in this case was, " in conducting the sale of the real estate of the said minors, under the order of the probate court, that I will in all respects conduct the same according to law, and for the benefit and best interest of the wards." We think it would have been far better to have avoided all questions, by a close adherence to the language of section 22, as above quoted, but we are inclined to hold that the oath taken is, *in substance*, that required, and thus satisfies the statute. " The best interest of the wards," would appear to demand the same skill, care and diligence, as the greatest "advantage of all persons interested." As the oath appears to have been taken at the date of the license, we think it is fair to presume that it was taken before anything was done under the license, and of course " before fixing on the time and place of sale."

Third, as to whether " the guardian was licensed to make the sale by a Probate Court of competent jurisdiction," a license having been granted by a *Probate Court* in this case, the question is, was such license granted by a Probate Court of *competent jurisdiction ?* This will depend upon the sense in which the phrase " *competent jurisdiction* " is used in the statute. We think it is susceptible of two meanings. It may signify that the court must acquire and exercise jurisdiction

competent to grant the license, through and by reason of a strict conformity to the requirements of the statute, by which the steps preliminary to the issue of license are pointed out; or it may signify jurisdiction over the subject matter, a sort of authority in the abstract, to hear and determine the case; in other words, " by a Probate Court of competent jurisdiction " may be meant, a court whose jurisdiction it is proper to invoke in the given instance. We think the phrase " competent jurisdiction " is not to be taken in the first sense above spoken of, for the section in which the phrase is found is professedly a healing statute, plainly designed to heal certain irregularities, and, therefore, excusing to some extent a non-compliance with the provisions of law. We are of the opinion that the language, " by a Probate Court of competent jurisdiction," signifies *the Probate Court whose jurisdiction it is proper to invoke* in the particular case in hand. Section 6, Ch. 38, page 415, Pub. Stat., provides that the application for license to sell must be made to the Probate Court of the county in which the guardian was appointed. In the case at bar, the guardian was appointed in Ramsey county, and the Probate Court of Ramsey county was, therefore, "the Probate Court of competent jurisdiction " in this instance, in the meaning of the statute, according to our construction. If this position be sound, it follows, that when the ward, or a party claiming under the ward, attacks a guardian's sale otherwise than by appeal, he cannot be permitted to go behind the granting of the license any further, or for any other purpose than to inquire whether it was granted by the Probate Court of the county in which the guardian received his appointment. It being ascertained that the license was granted by such Probate Court, the statute, so far as an action like the present is concerned, makes it immaterial whether any of the steps pointed out as preliminary to the obtaining of the license in the regular manner, have been complied with or not. The term "jurisdiction" is used, not unfrequently, as signifying

"authority to hear and determine," in the abstract, so to speak. *United States v. Anedondo*, 6 Peters, 709; *Grignon's Lesses v. Aster*, 2 How. (U. S.) 338, and cases cited. Thus, we speak of admiralty jurisdiction, of equity jurisdiction, of criminal jurisdiction, and of probate jurisdiction, as denoting the authority of certain courts to adjudicate upon certain classes of matters, which, in the distribution of judicial functions, are assigned to them respectively. The word jurisdiction is also evidently used in this sense in sections 2 and 5, of Art. VI, of our own Constitution, and in section 7 of the same article, in which it is provided that "a Probate Court shall have jurisdiction over the estates of deceased persons, and persons under guardianship," etc., etc. So, also, in many passages in the statutes, relating to the powers and duties of the several courts of the State. We think that the Legislature, in view of the fact that in many portions of the country the office of probate judge must be filled by men not learned in the law, (and this would seem to be contemplated by the Constitution,) nor trained to accurate business habits, that the records would often be imperfectly kept; that the thankless and unremunerative duties of guardians are quite generally performed by non-professional persons, without the advice of counsel, enacted the provision upon which we have just been commenting, with a desire to throw security around guardian's sales, sufficient to encourage bidders to bid freely and fearlessly, and up to the value of the property offered, and for this purpose, they have protected *bona fide* purchasers against collateral attacks upon guardian's sales, by giving to the granting of license to sell, the force of an adjudication upon all the facts which strict conformity to the statute would require to be established as preliminary to the use of such license; and, although the results of this construction of the statute may be to deprive the ward of the land sold, *in specie*, in some cases where the statutory mode of procuring and consummating a sale has been widely departed from, yet in sec-

tion 24, immediately following section 23 under consideration, ample provision is made for the recovery, by any person interested, of damages arising from any neglect or misconduct in the proceedings of the guardian, by action upon his bond, or otherwise.

It was insisted, upon the argument, that the use of the word "competent," in the phrase "competent jurisdiction," was significant when read by the light of section 25, of the same chapter. It is there provided, that when the validity of the sale is drawn in question by a party claiming adversely to the ward, etc., the sale shall not be held void on account of any irregularity, etc., "provided, it shall appear that the guardian was licensed to make the sale by the *proper* Probate Court," etc. We think the words "competent," and "proper," are used synonymously; or, at any rate, that the expression "proper Probate Court," is used synonymously with "Probate Court of competent jurisdiction." The expression, "Probate Court having jurisdiction," seems to be used to accomplish precisely the same purpose in sections 52 and 54, page 424, Pub Stat. In fact, a comparison of sections 23 and 25, above cited, seems rather to confirm the view we have taken, for when the sale is attacked by the *ward*, a bond and oath are made indispensable requisites of a valid sale; while, when it is attacked by a party claiming *adversely* to the ward, neither bond nor oath are required. This has, we think, a tendency to show that the ward was expected to rely upon his action, given by section 24, against the guardian, "on the bond of such guardian, or otherwise." This was his remedy. A party claiming *adversely* to the ward, needed no remedy against the guardian. There was no privity between them; no mutuality of rights and duties. But while ample protection was afforded to *bona fide* purchasers, the guardian was made liable to the ward for damage, arising from his neglect or misconduct, and so it was proper, if not necessary, that the existence of the bond (if one

was required, the general bond being deemed insufficient) should be established, in order to bind the ward by the sale.

The statutes of Massachusetts, relating to guardian's sales, contain provisions similar to those under consideration, but, so far as we discover, they do not appear to have received a judicial construction. The statutes of Michigan, (on the same subject,) which were probably imported from Massachusetts, and are also much like our own, have, in two or three cases, been before the highest court of that State, and have received a construction in the direction of that we have put upon our statute in this opinion. *Howard v. Moore*, 2 Mich. 226; *Coon v. Fry*, 6 Ib. 506; *Marvin v. Schilling*, 12 Ib. 356.

Entertaining these views, it follows that we cannot sustain the objections taken to the petition for license, or to the notice, or want of notice, of hearing; but the allegations as to notice of sale being insufficient, the demurrer must be held to have been well taken as to them.

The only question remaining, arises upon the construction of an act, entitled, "An Act to protect purchasers of real estate at executor's, administrator's, or guardian's sales," approved March 3d, 1864. By this act, it is provided, that if any sale shall, for any cause whatever, be held void or irregular, the purchaser in good faith and for value, or his representatives, shall have a lien on the real estate sold for the purchase money, taxes paid, and interest thereon. The act goes on to provide for an examination into the proceedings had on the sale, and if the same shall be determined to be irregular, illegal or void, a resale is authorized to be made, and out of the proceeds, the purchase money, taxes and interest aforesaid, are to be paid next after the expenses of sale.

This is an action of ejectment to recover possession, and, in the absence of any special provision to tho contrary, there is no reason why the possession should not be surrendered to the rightful claimant, and the lien allowed to stand. There is nothing in the act of 1864 which makes the satisfaction and

discharge of the lien a condition precedent to an award of possession to the party legally entitled thereto, as owner of the fee, or otherwise. The act of 1864 is complete in itself. It gives the lien (that is, provided it is constitutional, a matter which we have no occasion now to determine) and, in the same breath, provides how that lien may be enforced. This method of enforcement is exclusive. *Andover, &c., v. Gould,* 6 Mass. 44; 14 Ib. 289. Assuming that the act of 1864 is constitutional, in whole, or in part, the lien which it gives forms no defense to this action.

The foregoing views, we think, dispose of all the substantial questions raised in the case, and, of course, lead to the conclusion that the order overruling the demurrer must be reversed. We remand the action, as it may be possible that the objections to the allegations of notice of sale can be obviated by amendment.