STATE OF MAINE *vs.* CHARLOTTE W. FULLER.

Penobscot.    Opinion September 4, 1909.

*Eminent Domain.   Town Ways.   Location.   Assessment of Damages.   Appeal.*
*Constitutional Law.   Constitution of Maine, Article I, section 21.   Revised*
*Statutes, chapter 4, sections 89, 90, 91; chapter 23, sections*
*7, 9, 18, 38, 42, 56, 65.*

The duty of establishing and constructing highways is imposed upon munici-
palities by public law, and in performing this duty a town is acting only
as the political agent of the State.

When a town way has been legally located by the municipal officers and
legally established by a vote of the town, it is an imperative duty laid
upon the road commissioner of the town by public law to see that the way
is wrought and opened for public travel.

The constitutional provision that "private property shall not be taken for
public uses without just compensation" does not require that the payment
of such compensation should precede the temporary occupation of land
"as an incipient proceeding to the acquisition of a title to it or to an ease-
ment in it." It operates to prevent the permanent appropriation of it
without the actual payment or tender of a just compensation for it, and
the right to such temporary occupation will become extinct by an unrea-
sonable delay to perfect proceedings including the payment of compensa-
tion.    Unless such compensation be made within a reasonable time,
damages may be recovered for the continued occupation and for the
injuries resulting from the prior occupation.

It is evident from the express terms and clear implication of the statutes
respecting the location of town ways and the assessment of damages for
land taken for those purposes that it was the intention of the legislature
that when a way has been duly located and established, the land taken is
to be actually occupied and the road built and opened to public travel
within two years from the location irrespective of the pendency of any
appeals upon the question of damages.

Where a town way had been legally laid out and legally established and
damages had been awarded for the land taken for the way and the land
owner had appealed from the award of damages, and the appeal was pend-
ing and the land owner was alive and competent to prosecute her appeal,
*held* that the appeal did not vacate the original award of damages and that
the town within the time limited by law had a legal right to enter upon
the land for the purpose of constructing the way notwithstanding the
pendency of the appeal.

Where a town way had been legally located and legally established and the way was constructed and the land owner obstructed the way by erecting a fence across the same and was indicted therefor, *held* that as between the land owner, who had a guaranty of just compensation, and the public who had a right to use the way thus legally established, it was not material to inquire whether the way was constructed under a valid contract or by the voluntary and gratuitous labor of the inhabitants of the town.

Where the defendant was indicted for obstructing a town way built over her land, by erecting a fence across such way and it appeared that the way had been legally laid out, and was legally established and opened for public travel after the lapse of sixty days and within the two years allowed by statute, and damages had been awarded to the defendant by the municipal officers, and the defendant had appealed from the award of damages, and the appeal was pending undetermined at the time of the alleged obstruction by the defendant, *held* (1) that the defendant's appeal, subject only to the contingency of her death, afforded her a certain and adequate method of having a just compensation for the taking of her land awarded by a disinterested tribunal; (2) that the occupation of the land over which the way was located was legally under the control of the officers of the town acting under public law; (3) that the way was a public way at the time of the erection of the fence and that by the erection of such fence the way was thereby unlawfully obstructed by the defendant.

In *Hayford* v. *Bangor*, 103 Maine, 434, it was observed in the opinion, arguendo, that Mrs. Hayford's "right to have her damages assessed by some constituted tribunal upon notice and hearing was a constitutional right and was fully awarded to her by the provision for an estimate by the municipal officers." If construed to mean that her right was fully accorded to her by the provision for an assessment by the municipal officers in the first instance, subject to the right of appeal to have the question of just compensation determined by an impartial tribunal had been fully satisfied by the estimate of the municipal officers, it must be deemed unwarranted. In any event the statement quoted was obiter dictum and not necessary to the decision of that case.

Where a way had been legally located and legally established, and constructed and opened within the time limited therefor by law, but the land owner had appealed from the assessment of damages and the appeal was still pending and the land owner was alive and competent to prosecute the appeal, *held-* that the case *Peirce* v. *Bangor*, 105 Maine, 413, was not an authority for the contention that the construction or opening of the way was premature because the appeal was still pending.

*Cyr* v. *Dufour*, 62 Maine, 20, *Hayford* v. *Bangor*, 103 Maine, 434, *Peirce* v. *Bangor*, 105 Maine, 413, considered.

On report. Judgment for the State.

The defendant was indicted on the charge of having obstructed an alleged town way in Lincoln, Penobscot County, by erecting

and maintaining a fence across the same. When the case came on for trial, an agreed statement of facts was filed and the case was then reported to the Law Court to render such judgment as the facts and the law required.

The case is stated in the opinion.

*H. H. Patten,* County Attorney, for the State.

*Hugo Clark,* for defendant.

SITTING: WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is an indictment against the respondent for obstructing a town way in the town of Lincoln by erecting a fence across it. The following facts appear from the agreed statement. On June 10, 1905, the way in question was legally laid out by the municipal officers of Lincoln over two parcels of the defendant's land and also over land of three other residents. June 17, 1905, the municipal officers made a valid return of their proceedings with the town clerk of Lincoln from which it appeared that the sum of $150 was awarded to the respondent for damages on account of her two parcels of land. Damages were also awarded to other owners over whose land the way was located. June 26, 1905, the town voted to establish and allow this town way as laid out by the selectmen.

The respondent took an appeal to the Supreme Judicial Court from the award of damages made to her by the municipal officers which is now pending. At the annual March meeting, 1905, and every year since then the town of Lincoln elected one or more road commissioners who qualified and acted during the terms for which they were chosen. None of the selectmen of the town acted as road commissioner in that year or in any year since. Subsequently in the summer of 1905 the selectmen of the town without any vote of the town therefor made an oral contract whereby it was agreed by Ida M. Fleming over whose land the way was laid out, and her husband John G. Fleming that they would build the road to the satisfaction of the town. No appropriation was ever made and no money ever

raised or voted by the town for the express purpose of building the way although money was voted in 1895 and every year since for the general purpose of repair of highways. During the same season but more than sixty days after June 26, the Flemings above named entered upon the land over which the way was laid out and constructed a road bed over the entire length of the location. During the same season the selectmen of the town informed the road commissioner for that year that John G. Fleming was to do the work of building the road, and that he, the road commissioner, "was to show him how." The boundary lines of the road had been run by a surveyor at the time it was laid out. In constructing the road Fleming used the road machine of the town which was turned over to him for that purpose by the road commissioner. The road commissioner also gave Fleming directions in regard to the manner of constructing the road and afterwards in the fall of 1905 made an inspection of the work and told the selectmen and Fleming that "it would do for the present." On one occasion during the temporary absence of the road commissioner the first selectman of the town also visited the location for the purpose of supervising its construction. Two culverts built on the road in the summer of 1905 were paid for out of the funds of the town and the items duly exhibited in the reports of the selectmen. A barrel of cement used by the mason in the construction of one of the culverts was paid for out of funds appropriated by the town for the repair of highways but it was not ordered nor paid for by the order of the road commissioner. It is not in controversy that the defendant erected and maintained a fence across the location August 15, 1908, as charged by the indictment. The case is reported to the Law Court upon this statement of facts, such judgment to be rendered as the law and facts require.

It is contended in behalf of the defendant that the construction or opening of the road was illegal, first, because the selectmen undertook to have the road constructed by a contract with a private party without the authority of the vote of the town, and secondly, because by reason of the pendency of the defendant's appeal from the award of damages, it is claimed that no right had accrued to the town to enter into actual occupation of the land for the purpose of building

a road, and the defendant therefore was not liable for erecting a fence upon her own land.

With respect to the defendant's first contention that the contract made by the selectmen for the construction of the road was not binding upon the town, it is undoubtedly true that without a vote of the town expressly empowering them so to do, selectmen who are not road commissioners are not authorized by law "to take the duty of building a town road out of the hands of the regular road officers," and cannot bind the town by contracts made by them for the construction of such a way. *Goddard* v. *Harpswell*, 88 Maine, 228, and cases cited; but the conclusion sought to be deduced from this proposition by the defendant is not warranted by the facts and circumstances of this case. It is admitted that the municipal officers "duly and legally laid out" the road in question, and that after the return of their proceedings had been filed with the town clerk in a town meeting duly called by a warrant containing an article for that purpose, the town "voted to accept and allow" the town way as laid out by the selectmen. The way was then duly located and established. R. S., chapter 23, section 18; and it is provided by section fifty-six of the same chapter that all such ways thus "legally established shall be opened and kept in repair."

The duty of establishing and constructing highways is imposed upon municipalities by public law, and in performing this duty the town is acting only as the political agent of the State. For its own convenience it is authorized to confer this power upon certain officers whose duties are expressly and by implication prescribed by statute. As observed by this court in *Small* v. *Danville*, 51 Maine, 359, "The duty of. the constituency in these political divisions is to elect their officers; that of the officers is to obey the public statutes." And in *Bryant* v. *Westbrook*, 86 Maine, 450, the court say: "The statute provides for the election or appointment of road commissioners or surveyors of highways whose duty it is to open and keep in repair public ways legally established within their districts." Section 65 of chapter 23 of the present revision authorizes a road commissioner to remove any obstacle which obstructs a way and to "dig for stone, gravel or other material suitable for mak-

ing or repairing ways," &c., and section seventy-two contains the following provision : "The road commissioner under the direction of the selectmen shall have charge of the repairs of all highways and bridges within the towns and shall have authority to employ the necessary men and teams and purchase timber, plank and other materials" for that purpose. Section 75 provides that "towns may authorize their road commissioners or other persons to make contracts for opening or repairing their ways."

In *Cyr* v. *Dufour*, 62 Maine, 20, the plaintiff sought to recover damages against a highway surveyor and others for an alleged trespass upon his land in opening a newly located highway across it. It was contended in behalf of the plaintiff that the location of the road was not valid and that the highway surveyor who had charge of the work of building the road was not legally appointed or sworn. But the court held that the validity of the location could not be collaterally questioned and with respect to the second contention said : "Nor do we think it would be of any avail to the plaintiff if it should appear that the highway surveyor who had charge of the work of opening the road was not legally chosen or sworn. It was competent for the selectmen to appoint any citizen of the town to open the road, whether he was a legally chosen surveyor or not. In fact we know of no rule of law that would prevent any one from working on a legally established highway, with the consent of the town, or its municipal officers, if he was willing to do so." In stating that it was competent for the selectmen to appoint any citizen of the town to open the road, it was obviously not the intention of the court to convey the idea that the selectmen without a vote of the town could make a contract for the construction of the road, which would be binding upon the town. If so, it must be deemed an error which has been corrected in subsequent opinions of the court. *Goddard* v. *Harpswell*, 88 Maine, supra, and cases cited. The purpose doubtless was to emphasize the proposition that if a legally established road was actually built and opened with the knowledge and consent of the town, it was immaterial to the land owner whether the work of construction was actually performed by a private citizen or a duly authorized road

surveyor. So in the early case of *Cragie* v. *Mellen,* 6 Mass. 7, it was held that when a town road had been legally established, a highway surveyor was authorized to enter upon the work of building the road without a special vote of the town for that purpose.

In the case at bar it has been seen that the road was duly located by the municipal officers and legally established by vote of the town. It was an imperative duty laid upon the road commissioner of the town by public law to see that the road was wrought and opened for public travel. The selectmen assumed to make an oral contract with certain citizens of the town for the construction of the road, but the work was done under the direction and supervision of the road commissioner and completed to his satisfaction. The expense of building two of the culverts in the road was paid out of the funds of the town and the items of such payments duly scheduled in the reports of the selectmen, and one barrel of cement used in the construction of the larger culvert was paid for out of the funds of the town appropriated for the repair of highways. The road machine of the town was turned over by the road commissioner to the contractors and used by them in building the road. Whether or not there had been created a legal obligation on the part of the town to pay the price agreed upon with the selectmen for the services of the contractors it is unnecessary to consider. The road had been built under the direction of the road commissioner with the aid of the selectmen and with the knowledge of the town. It was legally established and open for public travel after the lapse of sixty days and within the two years allowed by statute and no further action is shown to have been taken by the town in relation to it. It appears to have been open three years later when the obstruction alleged in the indictment was erected by the defendant.

Under these circumstances, as between the land owner, who has a guaranty of just compensation, and the public who had a right to use the road thus legally established, it is not material to inquire whether the road was constructed under a valid contract or by the voluntary and gratuitous labor of the inhabitants.

But it is further contended that the construction or opening of the road was premature, for the reason as alleged that the defend-

VOL. CV 37

ant's appeal upon the question of damages vacated the award made by the municipal officers and is still pending in the Supreme Judicial Court, and the recent case of *Peirce* v. *City of Bangor*, 105 Maine, 413, is cited to sustain this proposition. It will be readily seen, however, upon an examination of the question determined in that case, that the decision is not an authority in support of the defendant's contention in the case at bar. In *Peirce* v. *Bangor*, the defendant took land owned by Mrs. Hayford as a site for a public library building by virtue of sections 89, 90 and 91 of chapter 4, R. S. The "just compensation" to be paid by the city for the land so taken had been estimated by the municipal officers of the city in the first instance, as provided by section ninety, but the land owner appealed from their award to the Supreme Judicial Court in accordance with section ninety-one and asked to have the damages assessed by a jury in the manner provided respecting town ways as prescribed in that section. But before the case was heard Mrs. Hayford died and her legal representative desired to prosecute the appeal under the original petition. It was held in *Hayford* v. *Bangor*, 103 Maine, 434, that as her right of appeal was purely statutory and there was no provision for the survival and continuance of such a proceeding in the event of her death, the petition could not be further prosecuted by the representative of the appellant, and must be dismissed. This was the only question involved and the only question decided in that case. It was observed in the opinion, arguendo, that Mrs. Hayford's "right to have her damages assessed by some constituted tribunal upon notice and hearing was a constitutional right and was fully awarded to her by the provision for an estimate by the municipal officers." If construed to mean that her right was fully accorded to her by the provision for an assessment by the municipal officers in the first instance, subject to the right of appeal, that statement was correct; but if construed to mean that her right to have the question of just compensation determined by an impartial tribunal had been fully satisfied by the estimate of the municipal officers, it must be deemed unwarranted. In any event the statement quoted was obiter dictum and not necessary to the decision of that case. But in *Peirce* v. *Bangor*, 105

Maine, 413, the legal effect of the abatement of the appeal by the death of Mrs. Hayford, upon the validity of the city's claim to the land taken and the rights of the plaintiff as the successor in title to Mrs. Hayford, was for the first time brought directly in question and distinctly determined. It was there held that as the city of Bangor was directly interested in the land taken, the municipal officers of the city could not be deemed a disinterested tribunal competent to make a final award of damages without the assent of the land owner; that inasmuch as the legislature had omitted to provide for the survival and continuance of the pending proceedings for an appeal after the death of the original petitioner, and it was not possible for either the plaintiff or the defendant by means of any subsisting statutory provisions therefor, to have the question of just compensation determined by a disinterested tribunal, the constitutional guaranty of just compensation had not been and could not be fulfilled, that the city's title to the land must fail under this proceeding for its condemnation, and that there must be a new taking by the city to obtain a valid title.

It should be unnecessary to add that there is no warrant for extending the scope of the decision beyond the facts of that particular case. It determines the effect of the abatement of proceedings for an appeal caused by the death of the appellant. Whether the award of damages made by the municipal officers in any or every case is vacated by the appeal of a land owner from their estimate is a question which was not necessarily involved in that case, and the opinion does not assume to decide it. The case is manifestly not an authority for the contention that such original assessment or award is vacated by the appeal while the appellant is living and competent to prosecute his complaint.

The constitutional provision that "private property shall not be taken for public uses without just compensation" does not require that the payment of such compensation should precede the temporary occupation of land "as an incipient proceeding to the acquisition of a title to it or to an easement in it." It operates to prevent the permanent appropriation of it without the actual payment or tender of a just compensation for it, and the right to such temporary

occupation will become extinct by an unreasonable delay to perfect proceedings including the payment of compensation. Unless such compensation be made within a reasonable time, damages may be recovered for the continued occupation and for the injuries resulting from the prior occupation. *Riche* v. *Bar Harbor Water Co.*, 75 Maine, 91; *Davis* v. *Russell*, 47 Maine, 443; *Nichols* v. *S. & K. R. R. Co.*, 43 Maine, 356; *Cushman* v. *Smith*, 34 Maine, 247. See also Lewis on Em. domain, section 456.

The provisions of our statute respecting the location of town ways and the assessment of damages for the land taken for that purpose are in harmony with this doctrine. Section seven of chapter 23, R. S., provides that municipal officers shall not "order such damages to be paid nor shall any right thereto accrue to the claimant" until the land over which the way is located "has been entered upon and possession taken, for the purpose of construction or use." Section 9 allows the owner of land not exceeding one year after the location to take off timber wood or any erection thereon. Section 22 provides that "no such way shall be opened or used until after sixty days from its acceptance by the town," and section 38 declares that when town ways "are finally located by municipal officers, unless the land is entered upon and possession taken for said purpose within two years after the laying out, the proceedings are void." Finally section 42 gives the land owner an action of debt to recover the damages awarded him after thirty days from demand on the town treasurer.

It is evident from these express terms and clear implication of the statute, that it was the intention of the legislature that when a way has been duly located and established, the land taken is to be actually occupied and the road built and opened to public travel within two years from the location irrespective of the pendency of any appeals upon the question of damages. Otherwise it would be in the power of the land owner not only to delay the construction of the road, but to defeat the location of it altogether by taking an appeal upon the question of damages and delaying the final determination of it until the expiration of two years from the location of the road. It would not be reasonable to impute to the legislature

such contradictory purposes. It intended to prescribe the method of taking land in the exercise of eminent domain for the promotion of the public welfare and it did not intend at the same time to interpose obstacles which would have the effect of nullifying that legislation by defeating and delaying the contemplated improvements.

The defendant was not satisfied with the estimate of damages made by the municipal officers and exercised her statutory right of appeal. Her appeal is still pending undetermined; but subject only to the contingency of her death it affords her a certain and adequate method of having a just compensation for the taking of her land awarded by a disinterested tribunal. In the meantime the occupation of the land over which the road is located has legally been under the exclusive control of the officers of the town acting under public law. The road was built and opened to public travel within the two years allowed by the statute. It was a public way at the time of the erection of the fence described in the indictment and it was thereby unlawfully obstructed by the defendant.

*Judgment for the State.*