**POOL BEACH ASSOCIATION et al.**

**v.**

**CITY OF BIDDEFORD et al.**

Supreme Judicial Court of Maine.

Nov. 14, 1974.

Pierce, Atwood, Scribner, Allen & McKusick by Vincent L. McKusick, Donald A. Fowler, Jr., Everett P. Ingalls, III, Portland, for plaintiffs.

Bernstein, Shur, Sawyer & Nelson by Barnett I. Shur, Eric F. Saunders, Portland, Gaulin & Kimmel by Edward F. Gaulin, Biddeford, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

On August 16, 1973 taxpayers in the City of Biddeford presented to the City's Municipal Officers a petition, authorized under 30 M.R.S.A. § 4001,[1] to have the City take particular beach real estate in Biddeford (hereinafter "the beach property") for use as a public park and playground. On August 20, 1973 the Biddeford City Council directed the Municipal Officers to initiate appropriate "condemnation" proceedings. Pursuant to express provisions of 30 M.R.S.A. § 4002,[2] the Municipal Officers gave

---

1. This section reads:

"Any city or town upon petition in writing signed by at least 30 of its taxpaying citizens, directed to the municipal officers, describing the land to be taken, and the names of the owners thereof so far as they are known, may, at a meeting of such town or the city government, direct such municipal officers to take suitable lands for public parks, squares, playgrounds, buildings for municipal purposes or a public library building. Thereupon such officers may take such land for such purposes, but not without consent of the owner, if at the time of filing such petition with such officers or in the office of the clerk of such town or city such land is occupied by a dwelling house wherein the owner or his family reside. When land is taken under this section for a public park, the fee of such land may be taken and compensation assessed and paid accordingly. Land in any town so taken for a public park may by authority of a majority vote at a town meeting be transferred and conveyed to the Federal Government so as to become a part of a national park. Nothing herein shall be held to deprive the former landowners from proceeding to

restrain the use of such land for other than public park purposes."

2. Section 4002 of 30 M.R.S.A. states:

"Whenever the municipal officers of such city or town are directed to take land as provided in section 4001, they shall, within 10 days, give written notice of their intention to take such land, describing the same and the time and place of hearing, by posting the same in 2 public places in the town where the land lies and in the vicinity thereof, and by publishing the same in a newspaper printed in such city or town, 7 days before the day of such hearing, if any, otherwise in a newspaper printed in the county where the land lies, 3 weeks successively, the last publication to be 7 days before such hearing. The municipal officers shall meet at the time and place specified in the notice, view the land to be taken, hear all parties interested and if they decide that the land is suitable for the purpose, they shall take the same and estimate the damages to be paid to each owner, so far as known, and make return of their doings in writing, signed by a majority of them, which return shall describe by metes and

". . . written notice of . . . intention to take . . . [the beach property described by metes and bounds] and the time and place of hearing, by posting . . . in 2 public places . . . and by publishing . . . in a newspaper . . .."

After viewing the beach property and holding a hearing on September 5, 1973 (the date specified in the aforesaid "written notice"), and after a further hearing on September 17, 1973 (the date to which the original hearing had been adjourned), the Municipal Officers decided to "take" the beach property as "suitable" for a public park and playground; and they estimated $250,000.00 as the amount of damages to be paid to the owner in fee simple, Pool Beach Association, a Maine corporation. As required by 30 M.R.S.A. § 4002, the Municipal Officers then filed and recorded in the office of the Biddeford City Clerk a "return of their doings" in writing; and a copy of said "return", certified by the Biddeford City Clerk, was recorded in the York County Registry of Deeds.

The instant civil action was commenced in the Superior Court (York County) on October 4, 1973, the plaintiffs being: (1) the corporation, Pool Beach Association, as the owner in fee simple of the beach property purportedly "taken"; (2) Dana W. Balch and Marion H. Balch, taxpayers of the City of Biddeford and members of the

Pool Beach Association and who, as owners of a residence and other real estate abutting the beach property, have a "right of way" across it; (3) seven other persons who own real property situated in the City of Biddeford and are taxpayers of the City and members of the Pool Beach Association; and (4) ten persons, additional to all of the aforementioned, who are year-round inhabitants and taxpayers of the City of Biddeford.

Originally designated as defendants were: (1) the Municipal Corporation, City of Biddeford; (2) Gilbert R. Boucher, then the Mayor of the City and, as such, one of its Municipal Officers; and (3) all of the persons who, as the then members of the Biddeford City Council, were, with the Mayor, the Municipal Officers of the City of Biddeford.[3]

Invoking Superior Court jurisdiction by virtue of Rule 80B M.R.C.P., 14 M.R.S.A. §§ 5951–5963 (the Maine Declaratory Judgments Act) and 14 M.R.S.A. § 6051(12) (the so-called "10 taxpayers" statute), the complaint of plaintiffs sought, as one aspect of claimed relief, a declaratory adjudication that:

"[t]he action of defendants in purporting to take the Beach Property . . . [is] null and void because . . . the statute under which defendants purported to act, namely, 30 M.R.S.A. §§ 4001–03, as amended, violates the Due Process Clauses of the Maine Constitution and

bounds the land so taken and state the purpose for which it is taken, the names of the owners so far as known, and the amount of damages awarded to each. The return shall be filed and recorded in the clerk's office of such city or town and a copy thereof, certified by such clerk, shall be recorded in the registry of deeds for said county."

3. A City Election supervened after the complaint had been filed, and a new Mayor and new members of the City Council were elected. To reflect the changes produced by the election plaintiffs, on March 7, 1974, moved to substitute the new Mayor, Lucien A. Dutremble, as a party defendant in place of Gilbert R. Boucher, and the newly elected members of

the Biddeford City Council as the other defendants in place of those whom they had succeeded in office. On March 25, 1974 the Justice presiding in the Superior Court granted the motion for substitution of parties and the defendants in the action became, in addition to the City of Biddeford, the following: (1) Lucien A. Dutremble, as the Mayor and a Municipal Officer of the City of Biddeford, and (2) the newly elected members of the Biddeford City Council who, as such, were (with the Mayor) the Biddeford Municipal Officers: to-wit, John P. Fournier, Gerard A. Paquette, Daniel P. Boucher, Norman G. Labbe, Michael E. Bergeron, Roger O. Cote, Claire Malasnik, Norman R. Poirier and Richard P. Potvin.

the Fourteenth Amendment to the United States Constitution."

Upon completion of all pleadings the parties, on April 3, 1974, filed a stipulation including an agreed statement of facts and an agreement that particular questions of law be submitted "on Report" for decision by this Court.

The Agreed Statement stipulated in addition to the facts above delineated that: (1) all the persons who are the plaintiffs in the action, except Dana W. and Marion H. Balch, were given (by certified mail), and received, "notice" of the City's intention to take the beach property and the public hearings to be held thereon; and they were also sent (by certified mail), and received, a copy of the "return of their doings" which the Municipal Officers had filed and recorded; (2) Dana W. and Marion H. Balch, although not given "notice" by certified mail, acknowledge having

"had actual prior notice of all proceedings relative to the taking of the Beach Property by the City of Biddeford";

and (3)

"[m]embers of the public and representatives of the Pool Beach Association were present either in person or by counsel"

at the public hearings and

"publicly voiced their opinions both in favor of and against the proposed taking

of the Beach property by the City of Biddeford."

On April 2, 1974 the Justice presiding in the Superior Court made express findings that

"this action involves questions of law of sufficient importance or doubt as to justify reporting this action . . ."

and

". . . [a] decision thereof would in at least one alternative finally dispose of the action, . . .."

Accordingly, pursuant to Rule 72(a) M. R.C.P., the Justice reported to this Court for its decision the question whether

". . . the action of Defendants in purporting to take the Beach Property . . . [is] null and void, because . . . [the] statute [30 M.R.S.A. §§ 4001–03], under which Defendants have purported to act, both on its face and as applied, violates the due process clauses of the Maine Constitution and the Fourteenth Amendment to the United States Constitution."

Notwithstanding that the Justice's order of "report" refers to the "as applied" constitutionality of 30 M.R.S.A. §§ 4001–4003, all parties, in their briefs and at oral argument, have explicitly eliminated it from present consideration. They have confined the issue now to be decided to the correctness of plaintiffs' contention that there are "notice" deficiencies in 30 M.R.S.A. §§ 4001–4003 (hereinafter, "the statute")[4]

---

4. The provisions of Sections 4001 and 4002 have been set forth in n. 1 and n. 2 ante. Section 4003 reads:

"Any person aggrieved by the estimate of damages may have them determined by written complaint to the Superior Court in the manner provided respecting damages for the establishment of town ways. When such damages are finally determined, they shall be certified to the clerk of such city or town and paid by the treasurer thereof."

The foregoing reference to statutory provisions for determining the "damages for the establishment of town ways" is to 23 M.R.S.A. § 3005 which incorporates the provisions of

23 M.R.S.A. § 2058, an understanding of which requires consideration, in turn, of 23 M.R.S.A. §§ 2054–2057.

As here material, the ultimate import of all of these cross-referring statutes is that 30 M.R.S.A. § 4003 establishes that the judicial proceeding for the determination of damages must be commenced within 60 days after the occurrence of a particular event (the statute leaving unclear whether such event is to be the time of the filing and recording of the "return" of the Municipal Officers in the office of the clerk of the municipality or the date of the recording of a copy of said return in the Registry of Deeds of the County) ; and

rendering it infirm *facially*—i. e., unconstitutional in *all* its applications (see: United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ); hence, the statute is to be treated as if expunged from the statute books with the consequence that the "taking" of the beach property by the Biddeford Municipal Officers is a nullity.[5]

Plaintiffs base their position upon: (1) the decisions of the Supreme Court of the United States in Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); and Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)—concerning procedural due process of law requirements of the Fourteenth Amendment to the Constitution of the United States—in conjunction with an operative import plaintiffs attribute to Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928); and (2) the law of Maine—as plaintiffs interpret the full purport of Peirce v. City of Bangor, 105 Me. 413, 74 A. 1039 (1909)—that a judicial determination of just compensation validly perfected within a reasonable time is a condition precedent to the legality of an eminent domain "taking" of land.

 We may assume, arguendo, that in light of Hayford v. City of Bangor, 102 Me. 340, 66 A. 731 (1907) as recently evaluated in In re Bangor Hydro-Electric Company, Me., 314 A.2d 800, 803, 804 (1974), the Legislature has intended in the instant statute that

". . . the determination of the suitability of the property for the particular public use *and* the extent to which the property must be taken to satisfy the exigency" (p. 803)

shall be beyond the power of a Court to review (except as to whether the purpose is truly "public" or the municipal officers have committed some other independent abuse of power or have acted in bad faith). On this hypothesis, *Walker* and *Schroeder* have decided that even if due process of law may not require that the land owner be given personal notice of, and opportunity to be heard, concerning the "taking" as such—Rindge Company v. County of Los Angeles, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923); Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135 (1919),—the facet of the eminent domain process concerned with the determination of compensation, since it involves private rights, cannot, consistently with federal due process of law mandates,[6] become final and binding as to record owners of legally protected interests in the land "taken" unless they have been given a legislatively prescribed "personal notice"[7] of the availability of, and their need to resort (for the full protection of their private rights) to, the proceedings legislatively delineated to achieve final and binding determination of compensation[8]—with the possible qualification that if said owners have otherwise had timely "actual notice"

there is no express provision for notice of the occurrence of such event other than the "notice" provisions contained in 30 M.R.S.A. § 4002.

5. Plaintiffs claim such facial invalidity "nonretrospectively"—in the sense that they ask nullification of the "taking" in (1) the case at bar, (2) existing cases, if any, in which the statute is similarly challenged as unconstitutional and (3) cases arising subsequently to the case at bar.

6. This Court deems a violation of federal due process to be, automatically, a violation of the due process of laws clause of the Constitution of Maine. Michaud v. City of Bangor, 159 Me. 491, 196 A.2d 106 (1963).

7. As used throughout this opinion, "personal notice" signifies the kind of notice held in *Schroeder* to be such as is prescribed by the ". . . general rule that emerges from . . . *Mullane* [v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950)] . . ." (p. 212 of 371 U.S. p. 282 of 83 S.Ct.), namely: " 'Where the names and post-office addresses of those affected by . . . [the] proceeding are at hand, . . . resort to . . . the mails to apprise them . . .' " (p. 213 of 371 U.S., p. 282 of 83 S.Ct.) is required—such "mailing" to be in accordance with the specification as to notice by "mail" contained in Rule 4(f) M.R.C.P.

8. Bragg v. Weaver, supra, held that when the landowner has adequate opportunity, "by

of such proceedings a "due process of law" infirmity will not be adjudicated.[9]

▮▮ We find it unnecessary presently to decide whether *Walker* and *Schroeder*, conjoined with such further implications as plaintiffs seek to derive from Wuchter v. Pizzutti and Peirce v. City of Bangor, dictate (as plaintiffs contend) that the "taking" authorizations of the instant statute be nullified. We assign plenary scope to the classic and powerful presumption that the Legislature intends its enactments to meet constitutional standards, and, therefore, we construe 30 M.R.S.A. § 4003 (as it incorporates by reference 23 M.R.S.A. § 3005 etc.) to require that the record owners of legally protected interests in the land "taken" be given the "personal notice" constitutionally necessary to allow the judicial proceedings therein delineated to pro-

duce a final and binding determination of the compensation to be paid.

Plaintiffs seek to prevent such "saving" judicial construction of the statute by arguments that: (1) the present context is not precedentially controlled by this Court's decision in Michaud v. City of Bangor, 159 Me. 491, 196 A.2d 106 (1963) since the statute in *Michaud* upon its face offered personal notice as an alternative to notice by publication whereas the instant statute makes no mention of personal notice and (2) this Court should be guided by an 1886 decision of the Michigan Supreme Court in Knudinger v. City of Saginaw, 59 Mich. 355, 26 N.W. 634 (1886) in which the reasoning was that:

"When, . . ., the statute specifies what notice shall be given, and does not include personal notice, it excludes that

---

exercising . . . [a] right to appeal", for a full hearing in a Court of general jurisdiction on the issue of compensation before it is finally determined, the demands of due process of law are satisfied. Also: Peirce v. City of Bangor, supra; State v. Fuller, 105 Me. 571, 75 A. 315 (1909) ; and Brown v. Kennebec Water District, 108 Me. 227, 79 A. 907 (1911).

Walker v. City of Hutchinson, supra, clarified that such opportunity for a judicial hearing on compensation becomes constitutionally "adequate", under due process of law criteria, when the land owner is given personal notice of the events to which the "appeal" is geared and the time for initiating the "appeal" commences to run from the time of such notice. (n. 6 at pp. 116, 117 of 352 U.S., 77 S.Ct. 200.)

9. In National Equipment Rental, Ltd. v. Szukhent, et al., 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) the Supreme Court of the United States strongly intimated that in *Walker* and *Schroeder* it was *both* that: (1) the statute had omitted explicit requirement for personal notice concerning the proceedings for the final and definitive determination of just compensation to record owners of legally protected interests in the land "taken" *and* (2) said owners had no actual notice thereof which allowed the Court to decide that there had been a "procedural due process" deficiency.

There is also in the *National Equipment* case, supra, a pointed suggestion that the

holding in Wuchter v. Pizzutti, supra,—that ". . . a state nonresident motorist statute which failed to provide explicitly for communication of notice was . . . unconstitutional, despite the fact that notice had been given to the defendant in that particular case" (p. 315 of 375 U.S., p. 414 of 84 S.Ct.)—is to be confined to the *special* type of statute there involved, ". . . a statutory scheme by which a State attempts to subject nonresident individuals to the jurisdiction of its courts", (p. 315 of 375 U.S., p. 414 of 84 S.Ct.) and may not have applicability to the "notice" provisions of statutes *in general*.

Mr. Justice Frankfurter, dissenting in Walker v. City of Hutchinson, supra, provides further indication that Wuchter v. Pizzutti does not require nullification of the entirety of an eminent domain statute— including its provisions authorizing a "taking" —solely because there are constitutional deficiencies in the "notice" provisions as to the proceedings for the determination of compensation. Justice Frankfurter says of the scope of the *Walker* decision:

"Without intimating any opinion whether in the circumstances of this case appellant was denied the due process required in determining fair compensation for property taken under the power of eminent domain, I feel constrained to point out that *the Court's decision does not hold the taking itself invalid . . . .*" (emphasis supplied) (pp. 121, 122 of 352 U.S., p. 205 of 77 S.Ct.)

method, and renders the statute invalid." (p. 637 of 26 N.W.)

Hypothesizing, without need to decide, that he presence in the *Michaud* statute, and the omission here, of an express provision for personal notice as an alternative means of notice may prevent *Michaud*, by itself, from controlling the instant situation, we are satisfied that this Court's decisions in *both Michaud* and Wilson v. Wilson, 143 Me. 113, 56 A.2d 453 (1947) have aligned this Court in doctrinal opposition to the approach of Knudinger v. City of Saginaw, supra.

In *Wilson* this Court confronted a statute the express language of which manifested a total lack of legislative concern for "notice" in any form—the statute explicitly commanding that a person adjudicated to have legal obligation for the support of minor children, or alimony (or a specific sum in lieu thereof) be immediately subject to deprivation of personal liberty by an execution running against the body issued without prior notice of alleged default in the discharge of the obligation. Yet, this Court found sufficient amplitude and cogency in the presumption of the constitutionality of legislative enactments to require that the enactment involved in *Wilson*

" . . . must . . . be interpreted to provide for the issuance of execution only after proper notice shall have been given." (p. 121 of 143 Me., p. 458 of 56 A.2d.)

■ *Wilson* and *Michaud* are convincing attestations that in dealing with a statute under constitutional attack for a failure expressly to state requirements for personal notice to persons who are to suffer deprivations of liberty or property, this

Court will interpret the statute as embodying prescriptions for "personal notice" (as constitutionally mandated) *unless* the *express* language of the statute *plainly, unequivocally, and without need to invoke processes of inference* establishes *beyond rational doubt* a legislative intention to dispense with such notice (notwithstanding that it may be constitutionally requisite).

In Knudinger v. City of Saginaw, supra, the Michigan Court engaged in a process of negative implication to draw an inference (from that which was affirmatively stated in the statute) that the Legislature intended the exclusion of a constitutionally requisite method of notice. Knudinger v. City of Saginaw is thus fundamentally at odds with the plenary implementation of the presumption of constitutionality which, as revealed by Wilson v. Wilson and Michaud v. City of Bangor, is the policy of this Court.[10]

■ We decide, therefore, that the provisions of 30 M.R.S.A. §§ 4001–4003—insofar as the Legislature (1) affirmatively specified in Section 4002 the giving of "written notice of . . . intention to take" to be accomplished by "posting" and "publishing" and (2) omitted in 30 M.R.S.A. § 4003 (as incorporating 23 M.R.S.A. § 3005 etc.) expressly to require that record owners of legally protected interests in the land "taken" be given personal notice adequate to alert them to the availability of, and their need to invoke (for the full protection of their private rights), the statutorily delineated judicial proceedings for the definitive and final determination of their damages—fail to establish *plainly, unequivocally, and without reliance upon inferential processes* that, *beyond rational doubt,* the Maine Legislature truly intended to dispense with such personal notice (notwith-

10. The enormous potency attributed by this Court to the presumption of constitutionality, especially as applicable to eminent domain statutes, is illustrated by language used in Oxford County Agr. Soc. v. School Administrative District No. 17, Me., 220 A.2d 485 (1966) :

"Whatever the Legislature in fact intended, it must be presumed that it intended to do that only which the Constitution authorized it to do, for no legislature could have entertained an intent to deprive an owner of his constitutional right to just compensation under due process of law." (p. 487)

standing that it be constitutionally necessary).

Accordingly, we interpret 30 M.R.S.A. § 4003, (as it incorporates 23 M.R.S.A. § 3005 etc.) to require that the record owners of legally protected interests in the land "taken" be given "personal notice" of the occurrence of the events which render available, and necessary to be invoked for the full protection of their private rights, the judicial proceedings statutorily provided for the definitive and final determination of the damages resulting from the "taking"; and as to said record owners the 60 day period specified for the institution of said judicial proceedings commences only after such personal notice is given.

■ With 30 M.R.S.A. §§ 4001–4003 thus interpreted, the constitutional attack herein levelled against that statute, in the facial aspects asserted by plaintiffs to nullify the "taking" of the beach property, fails.

The entry is:

It is adjudicated that: (1) 30 M.R.S.A. §§ 4001–4003, properly interpreted, requires that the record owners of legally protected interests in land "taken" be given personal notice of the occurrence of the events which render available, and necessary to be invoked for the full protection of private rights, the judicial proceedings delineated for the definitive and final determination of the damages caused by the "taking"; and as to said record owners the 60 day period specified for the institution of said judicial proceedings runs from the date said required personal notice is given; therefore, (2) the "notice" provisions of 30 M.R.S.A. §§ 4001–4003 sufficiently comply with the requirements of the "due process of law clauses" of the Constitution of Maine and the Fourteenth Amendment to the Constitution of the United States to avoid a facial infirmity nullifying the instant "taking" of the beach property.

All Justices concurring.