## SPRING *vs.* PARKMAN.

| 12 | 127 |
| 92 | 182 |

The title of a devisee under a will, to whom an immediate estate is given, will date from the *death of the testator*, and not from the time of the *probate of the will*.

And where the will was made and proved in another State, and a copy was subsequently filed and recorded in a Probate Court in this State, pursuant to the provisions of *stat.* of 1821, *ch.* 51, the estate of the devisee would vest by relation back to the time of the death of the testator, and not to the time of filing and recording the will.

Where one undertook to convey as executrix, by virtue of an alleged authority given in the will of the testator, warranting against her heirs, who were also the heirs of the testator, it was holden, that, in case of a defect of title or authority, there being no fraud in the case, the grantee must look for his remedy to the covenants in her deed, and that he could not maintain *assumpsit* to recover back the consideration paid.

THIS was an action of *assumpsit*, for money had and received, brought to recover back money paid by the plaintiff to the defendant, as the consideration of certain conveyances made by her, in her capacity of executrix of the last will and testament of *Samuel Parkman*, late of *Boston*, deceased.

On trial, the following facts were developed. In the year 1824, *Samuel Parkman* died in *Boston*, leaving a will, which was duly presented at a Probate Court held *June*, 1824, and proved, approved, and recorded; and the defendant, his widow, at the same court, was appointed executrix.

The 22d and 23d items in said will were in the following words, *viz.*: " 22d. All the residue and remainder of any estate, " real, personal, or mixed, I give to my beloved wife, to be by " her used as she may think best during her life, and what of it " remains at her decease, I give to my eight children and to their " heirs, to be equally divided. And I hereby appoint my wife " the residuary legatee, she paying all the legacies and annuities, " and fulfilling my wishes as expressed in this instrument."

" 23d. And I hereby appoint my wife, *Sarah Parkman*, the " sole executrix of this my last will and testament, giving her full " power and authority to sell, convey, and give sufficient deeds " of all my real estate which she may deem expedient to sell, " and which is not otherwise appropriated in this instrument; and

" also to make such conveyances among the heirs as may be " found necessary."

The lands subsequently conveyed by the defendant to the plaintiff, were not otherwise appropriated in the will.

A principal part of these lands had been conveyed to *Samuel Parkman*, by *Seth Spring*, the father of the plaintiff, as early as the year 1814, said *Parkman* giving him back a writing, not under seal, acknowledging that he held them as collateral security for the payment of certain notes he held against the firm of *Seth Spring & Sons*, of which firm the defendant was a member.

On the 2*d* day of *July*, 1827, *Seth Spring* addressed a letter to *Mrs. Parkman*, informing her that he had made arrangements with his son, *John Spring*, to settle and adjust all the claims which the estate of *Samuel Parkman* had against the firm of *Seth Spring & Sons*, and requesting her to settle with him in such manner as they could agree.

Accordingly, on the 4*th* day of *July*, 1827, *Mrs. Parkman*, in pursuance of an agreement between her and the plaintiff, conveyed to him, in her capacity of executrix and residuary legatee, the lands aforesaid, partly lying in this State and partly in *New Hampshire*, warranting against all claiming under her and her heirs. The defendant at the same time giving up, to be cancelled, the memorandum aforesaid, given by *Samuel Parkman* to *Seth Spring* — and also reconveying the same lands to the defendant, by deeds of warranty and mortgage, to secure the payment of five notes of hand for four thousand dollars each, then also given by the plaintiff to the defendant.

On the 21*st* of *March*, 1828, the defendant, by her attorney, filed in the Probate Court, in the County of *Lincoln*, an attested copy of the will of *Samuel Parkman*, and of the probate thereof in the County of *Suffolk*, and petitioned the Judge of Probate to have the same recorded, which was done after notice, returnable at a Court, holden *June*, 1828. There was no evidence of her having been appointed executrix of said will in this State, other than the filing and recording of the will aforesaid, or that she had ever given bonds in this State, as executrix. Nor was there any evidence that a copy of the will had been filed and recorded in the State of *New Hampshire*.

Spring *v.* Parkman.

The plaintiff and his father had continued to occupy most of the property conveyed as aforesaid, and had been disturbed in such occupation by no one but the defendant, under the mortgage aforesaid.

Upon this evidence, the Chief Justice directed a nonsuit, which was to stand, or be taken off and a new trial granted, as the opinion of the whole Court should be upon the case as reported.

*A. G. Goodwin*, for the plaintiff.

1. The defendant had not the power to convey, by force of the will, which she assumed to have, not being administratrix in this State : *Cutter* v. *Davenport*, 1 *Pick.* 81 ; *Stearns* v. *Burnham*, 5 *Greenl.* 261. The title to, and disposition of real estate must be governed by the laws of the State where the land lies : *Goodwin* v. *Jones*, 3 *Mass.* 518.

2. Nor did she acquire that power by causing the will to be filed and recorded in this State, and giving bond, *prior to the conveyance :* *Borden* v. *Borden*, 5 *Mass.* 67 ; *Stearns* v. *Burn ham*, 5 *Greenl.* 261 ; *Thompson* v. *Wilson*, 2 *N. H. Rep.* 291 ; *Maine Stat. ch.* 60, § 14, 17.

3. The filing and recording of the will, in 1828, did not operate to confirm her deed of 1827. The doctrine of confirmation is not applicable to such a case. It cannot affect a void estate : *Cruise Dig. Tit.* 32, *Deed.*

4. No title of her own passed by the deed. The devise and power did not give her *the fee.* 1. " Though an estate, if given to a person generally, or indefinitely, with a power of disposition, carries *a fee*, yet if an estate *for life* only is given, and annexed to it a power of disposition of the reversion, the express limitation for life will control the operation of the power, and prevent it from enlarging the estate to a fee :" 4 *Kent's Com.* 535, 536, and cases there cited ; *( uise Dig. Tit.* 38, *Devise ; Co. Litt.* (96) *a ; Inman & als.* v. *Jackson*, 4 *Greenl.* 237 ; *Lessee of Willis* v. *Bucher*, 2 *Bin.* 455; *Jackson* v. *Merrill*, 6 *Johns. Rep.* 193 ; *Lithgow* v. *Kavanagh*, 9 *Mass.* 165 ; *Jackson* v. *Bull*, 10 *Johns.* 148 ; 4 *Kent's Com.* 540 ; *Stearns et ux.* v. *Winship et ux.* 1 *Pick.* 326 ; *Maine Stat. ch.* 38, § 3. Nor, 2.

did her *life estate* under the will pass.   She had no *seisin in law*. The will, until proved and recorded, could give no title.   *Shumway* v. *Holbrook*, 1 *Pick*. 116 ;  *Dublin* v. *Chadbourne*, 16 *Mass*. 442.   The fee was cast upon the heirs of *Samuel Parkman* : *Co. Litt. sec.* 169, 113 *a* ;  *Brown & al* v. *Wood et ux.*, 17 *Mass.* 68 ;   *Wells* v. *Prince*, 4 *Mass.* 67 ;  *Quarles & al.* v. *Quarles*, 4 *Mass.* 668 ;  *Somes* v. *Skinner*, 3 *Pick.* 52 ;  *Davis* v. *Hayden & al.* 9 *Mass.* 518.   Nor had she *a seisin in fact*, and therefore nothing passed by her deed : *Porter* v. *Perkins & al.* 5 *Mass.* 236 ;  *Warren* v. *Childs*, 4 *Mass.* 222 ;  *Mayo & al.* v. *Libby*, 12 *Mass.* 343 ;  *Somes* v. *Skinner*, 3 *Pick.* 56.

Nor, 3. did the defendant, by the filing of the will in 1828, become seised of a life estate which *enured to the plaintiff.*   This principle of law is confined to covenants of warranty : 4 *Kent's Com.* 261, note *b*, and cases there cited ;  *Porter* v. *Hill*, 9 *Mass.* 34 ;  *Mason* v. *Muncaster*, 9 *Wheat.* 454 ;  *Jackson* v. *Matsdorf*, 11 *Johns.* 97 ;  2 *Serg. & Rawle*, 515 ;  *Allen* v. *Sayward*, 5 *Greenl.* 227 ;  *Dane's Abr.* 495 ;  *Webber & al.* v. *Webber*, 6 *Greenl.* 127 ;  *White* v. *Erskine*, 1 *Fairf.* 306 ;  1 *Salk.* 276 ; *Hathorne* v. *Haines*, 1 *Greenl.* 238.

5. The defendant, by undertaking to convey a fee, when at most she had but a life estate, forfeited that estate, and it may, at any moment, be successfully claimed by the heirs of *Samuel Parkman* :  *Co. Litt. sec.* 415, 251, *a* ;  *Cruise Dig. Tit.* 3, *Estates for Life* ;  *Com. Dig. Tit. Forfeiture*, A.;  *Stevens & ux.* v. *Winship & ux.* 1 *Pick.* 327.

6. There are no covenants in the defendant's deed, which would constitute a consideration for the notes given by the plaintiff.   At the time of the conveyance, the title was in the heirs of *Samuel Parkman.*   And them, her covenant in no wise affects. As heirs to *Samuel Parkman*, they could not be estopped as heirs to *Sarah Parkman*, or *vice versa.*   It did not even operate upon her own heirs.   It was a covenant, dependant and waiting upon the land.   *Com. Dig. Estoppel*, C ;  3 *D. & E.* 438 ;  *East.* 231 ;  1 *Ld. Raym.* 388 ;  1 *Salk.* 199 ;  11 *East*, 165 ;  8 *Mass.* 50 ;  11 *Pick.* 280 ;  1 *Greenl.* 359.

Nor did the giving up of the notes of *Seth Spring & Sons*, constitute a consideration for the plaintiff's notes.   The convey-

ance by *Seth Spring* to *Samuel Parkman,* and the writing back did not constitute a mortgage — and the giving up of the notes did not impair the title of the heirs.

7. *Assumpsit* to recover back the consideration paid, is the proper remedy : *Bishop* v. *Little,* 3 *Greenl.* 405 ; *Shearer* v. *Fowler,* 7 *Mass.* 31 ; *Johnson* v. *Johnson,* 3 *Bos. & Pul.* 162 ; *Shepperd* v. *Little,* 14 *Johns.* 210 ; *Com. on Con.* 43 ; *Hatch* v. *Smith & trustees,* 5 *Mass.* 51.

*Goodenow,* for the defendant, argued at length in opposition to the positions taken by plaintiff's counsel, citing the following authorities : *Sugden's Vend.* 312 to 318, and authorities there cited ; *Greenleaf* v. *Cook,* 2 *Wheat.* 13 ; *Jacob's Law Dic. Tit. Executor* ; *Goodwin* v. *Jones,* 3 *Mass.* 517 ; *Howard* v. *Witham,* 2 *Greenl.* 390 ; *Lloyd* v. *Jewell,* 1 *Greenl.* 352 ; *Fairbanks* v. *Williamson,* 7 *Greenl.* 96 ; *Knox* v. *Jenks,* 7 *Mass.* 488 ; *Gray* v. *Gardner,* 3 *Mass.* 399 ; *Colman & al.* v. *Anderson,* 10 *Mass.* 105 ; *Perkins* v. *Fairfield,* 11 *Mass.* 227 ; *Barrett* v. *Barrett,* 8 *Greenl.* 346.

*E. Shepley,* closed the argument on the part of the plaintiff.

At a subsequent term of the Court, the opinion was delivered by

WESTON C. J. — Much of the argument, on the part of the plaintiff, turns upon the assumption, that the defendant had no title to the land, she undertook to convey, until after the date of her deed, when she filed in the probate office for the county of *Lincoln,* in this State, an attested copy of the will of her late husband and of the probate thereof; and when by order of the court of probate for that county, upon her petition, the said attested copy, with the probate, was ordered to be there recorded.

By the *statute* of 1821, *ch.* 51, regulating the jurisdiction and proceedings of the court of probate, § 17, it is provided, that where the copy of any will, which has been proved and allowed in any probate court in any of the *United States,* shall be directed to be filed and recorded in any probate court in this State, pursuant to the act, the filing and recording thereof shall be of the same force and effect, as the filing and recording of an original will, proved and allowed in the same court of probate. And

when an original will is thus proved and allowed, does the title of the devisee under it, to whom an immediate estate is given, date from the death of the testator, or from the time of the probate ? We have no doubt, from the death of the testator. Sometime must necessarily elapse, between his decease and the probate of the will, Thirty days are allowed to the executor, within which to file it in the probate office. And when it is offered for probate, if the utmost diligence is used, notice must be given to the heirs at law, and a day appointed to receive proof of it. If on that day, it is proved, approved and allowed, an appeal may be interposed to the Supreme Court of Probate. It may often be a year, sometimes more, before the final decree of the appellate court. If the will is ultimately established, the estates and interests, upon which it operates, prove to have been lawfully devised. They cannot, therefore, in the mean time, have vested in the heirs at law ; for by the *statute* of 1821, *ch*. 38, respecting wills, and regulating the descent of intestate estates, § 17, such lands, tenements, or hereditaments, or any right thereto or interest therein, of which any person shall die seised in fee simple, or for the life of another, only descend to his heirs, which he shall not have lawfully devised.

No estate can or ought to intervene between that of the testator, and that of the devisee. And the doctrine is, that a devise vests on the death of the testator, before entry : *Coke Lit*. 111 *a* ; 4 *Kent's Com*. 533. An entry, or something equivalent, where the possession is not vacant, may be necessary to give the devisee actual seisin. Were the law otherwise ; if, upon the probate of the will, the estate did not vest in the devisee, by relation to the death of the testator, he would not, as he unquestionably is, be entitled to the rents and profits in the mean time ; and there would be no one, who could bring an action for an injury to the estate, during that period, or who would be entitled to the damages.

The defendant, having authenticated her title in this State, in the form prescribed by law, and that title having relation back to the decease of the testator, it now appears, that when she executed her deed to the plaintiff, she was seised of a life estate at least, with a lawful power to dispose of the fee ; so that the plaintiff has, in fact, obtained all the title, contemplated by his

purchase. And she had actual seisin of all the lands conveyed here ; for, *Seth Spring*, in whose possession such of them were, as were not vacant and unoccupied, held in subordination to her title, and expressly acquiesced and aided in the arrangement, by which the conveyance was made to the plaintiff. It has been contended, that the defendant, having only a life estate, by conveying in fee, forfeited that estate ; but she had a disposing power, coupled with her interest, which was inseparably connected with it, and which she lawfully exercised.

But, if the defendant had no right to convey an indefeasible estate, and if the heirs at law of the testator could have recovered the land, the plaintiff received actual possession, and has never been disturbed by the heirs. Nor did he rely entirely upon the efficacy of the conveyance, without taking covenants to secure his title, which were effectual for this purpose ; or which would have entitled him to an adequate equivalent in damages. That which he purchased, was the right and interest, of which the testator died seised. If this was not lawfully conveyed by the defendant, his executrix, the plaintiff could be disturbed by no one, but the heirs at law of the testator. The defendant was his widow and the mother of his children. His heirs then were also her heirs. If the plaintiff was protected against them, his title could not be defeated ; and she expressly warrants the estate against her heirs, and all persons claiming under them. It is true that these heirs, if they inherited the estate from their paternal ancestor, would not be so bound by the warranty, that they might not claim and recover it. But she and her estate would be bound to make good the warranty, and if the covenant was broken by a recovery on the part of the heirs, must have been held liable to answer for the damages. And she had an ample estate, as the plaintiff well knew, for his security. He relied, as he well might, upon her covenants ; and they afforded him an effectual remedy, if it had turned out that there was any defect in her title or authority, in regard to that, which she undertook to convey. In this view of the case, as there is no pretence that any fraud or deception was practised upon the plaintiff, if he was disappointed in his title, his proper remedy should have been upon his covenants. And this was so decided in the case of *Joyce* v. *Ryan*, 4 *Greenl.* 101.

It does not appear that the will has been authenticated in *New Hampshire*, by any official proceedings there, if such are required by their laws. Whether, therefore, the plaintiff's title to that portion of the land, which lies in that State, which the defendant conveyed to him by other deeds, executed at the same time, is subject to any embarrassment, the case does not afford us the means of determining. These lands may be of little value, as the consideration expressed in the deeds, is merely nominal. But they are protected by the same covenants, which are to be found in the deed, conveying the lands in this State.

It appears therefore to us to be quite clear from the facts, that the plaintiff has not paid, or secured to pay, the consideration for his purchase, under circumstances, which will enable him to maintain an action of assumpsit to recover it back.

*Nonsuit confirmed.*