The facts fully appear in the opinion of the Court, which was drawn up by
Appleton, C. J.
Stephen G. Inman enlisted as a soldier in the volunteer army of the .United States. At the time of his enlistment he was a resident of Milford, but his settlement was in Orono. While in the service, his family, being in actual distress, applied to the overseers of the plaintiff town for assistance, which they duly furnished, and gave notice of the same to the defendants, who declining to pay the same, this suit was commenced.
The relief was furnished while the Act of 1862, c. 127, § 1, was in force, which is in these words — "The cities, towns and plantations in this State arc hereby severally empowered to raise, by taxation or otherwise, to be applied to *530 aid in the support of the wife or dependent mother, father or sister, or minor children, being inhabitants of such city, town or plantation, of any soldier, sailor or marine, who may be actually engaged in the • military or naval service of the United States or of this State, in any recognized company, battalion or regiment of this State, or on board of any armed vessel of the United States, during the present rebellion. The money so raised, to be expended under the direction of the municipal authorities of said cities, towns and plantations, as the exigencies of the persons for whose benefit it was intended may severally require, for the relief of actual distress. And such aid may, at the discretion of any city, town or plantation, be continued to the family of any soldier, sailor or marine killed in battle, or by the casualties of war, or who may be discharged from' service in consequence of any disability resulting from the casualties of war, and not from his own fault, for a period not exceeding one year after such death or' discharge, provided, in case of such discharge, he shall not sooner recover from such disability.” ,
By § 2, a portion of the money so applied was to be reimbursed from the State treasury to the city, town or' plantation furnishing the aid referred .to in the preceding section.
By § 6, "No pauper disabilities shall be created by reason of receiving the aid provided for in this Act.”
By the pauper law, as established prior to the Act under consideration, towns and cities were obliged to relieve all persons destitute within their limits, with a right of. reclamation, when those relieved had a settlement elsewhere, against the towns where .such settlement might be. No special legislation, therefore, was necessary, for the purpose of enabling towns to relieve the families of destitute soldiers; — but it was, if the Legislature designed to prevent such relief from imposing upon, those relieved the disabilities of pauperism.
The Act of 1861, c. 63, provided only for those enlisted in the ten regiments therein referred to, — and enabled *531 towns to relieve the families of those enlisted-therein, without their incurring any disabilities. , But there were many in the service in 1862, on land and sea, who were not included within its terms. That Act imposed the burden of relieving upon the towns and cities where the volunteers, whose families were relieved, should reside at the time of their enlistment, irrespective of the question of their settlement. The Act of 1862, c. 127, was enacted to extend the benefits of the Act of 1861, c. 63, to all in the service of the government of the United States, and to relieve cities and towns from the burden of relieving the class of destitute persons therein enumerated, and to impose it upon the whole State, upon a compliance on the part of the cities, towns and plantations, relieving, with its conditions. It was not the intention that cities, towns and plantations, should recover in any case for such relief, but that they should in all cases receive remuneration from the State, to the extent provided in the Act.
If the first section left it at the election of towns to relieve in accordance with its provisions, the Act might be of no effect. If they may relieve under it or not — then all cities and towns may decline to relieve under it, and the Act thereby become repealed — and all families of volunteers relieved, by the fact of receiving relief, are made subject to the disabilities of pauperism.
If it be optional with cities, towns and plantations, whether they shall relieve persons destitute who are within its provisions, then if the town of Orono should relieve all the destitute families of its resident volunteers, under the first s’oction, and the town of Milford should relieve none, but should so relieve that it may recover compensation for the amount furnished of the defendants under the general pauper law, as they claim to do, then, in such case, Orono would be compelled to bear its share of the general burden of the State, as well as its particular and special liability to the plaintiffs, for the amount advanced bv them to the destitute families of volunteers having a settlement in the de *532 fendant town. The defendants .would be obliged to pay the plaintiffs without any remuneration therefor from the State, for this right is specially confined to cities and towns who relieve the destitute families of their inhabitants, who may have volunteered, and Inman, when enlisted, was not an inhabitant of Orono, and that town could not .receive from the State remuneration for the amount the •plaintiffs might recover for the support of his family. The statute intended all cities, towns and plantations, should support the destitute families of all inhabitants volunteering, irrespective of their settlement, and receive the amount furnished from the State. If the construction contended for were to prevail, one town could impose an unequal burden upon another, without the latter being able to recover it back, and at the same time escape its own just'share of taxation, — for the amount recovered, in such case, would not be included in the tax of the State, but would entirely fall on the town against which the recovery was had.
It is obvious, too, that this law is general, applicable to all cities, towns and plantations, and that no right is any where given for any city or town or plantation to escape its provisions. If the right of election were given, it would cease •to be a law — if its enactment might be disregarded by any city or town so choosing.
It is insisted that this law is not mandatory. It was passed for the purpose of encouraging enlistments, and, as it sets forth, "in aid of the families of volunteers.” But, if not obligatory, if not mandatory, it is entirely inoperative or may be made so. The general rule in the construction of statutes, is, that when a public body is clothed with-power, and furnished with means to do an act required by the public interests, the execution of that power may be insisted upon as a duty, though the statute conferring be only permissive in its terms. The reasoning of Nelson, C. J., ■in the Mayor, &c., of New York ,v. Furze, 3 Hill, 612, is entirely applicable to the statute under consideration. "This statute,” he remarks, referring to the one, the con *533 struction of which the Court was called on to determine, "is one of public concern, relating exclusively to the public welfare; and though permissive mainly in its terms, it must be regarded, upon well settled rules of construction, as imperative and peremptory upon the corporation. When the public interest calls for the execution of the power thus conferred, the defendants are not at liberty arbitrarily to withhold it. The exercise of the power becomes then a duty, which the corporation are bound to fulfil. In the case of the King v. Inhabitants of Derby, (Skinner, 470,) a motion was made to quash an indictment found against the inhabitants for refusing to moot and make a rate to pay the constable’s tax. The ground taken for the motion was, that the statute was not imperative, but merely "they may meet,” &c. The Court, however, said, may in the case of a public officer is equivalent to shall; and if he does not do it (the act required,) he shall be punished, &c. The same principle was.also held in the case of the King v. Barlow, (2 Salk., 609) (Carthew, S. C., 293) when church wardens were indicted for not making a rate or assessment under 14 Car. 2, c. 12, § 18. The statute said, "they shall have power and authority to make a rate,” &c.; and it was insisted, they were simply invested with a power to do the act, but were under no obligation or duty to perform it as to render them punishable for neglecting it. The Court held otherwise ; observing that, "where a statute directs the doing of a thing for the sake of justice or the public good, the word may is the same as "shall.” And it was added, that when a statute says "the sheriff may take bail, this is construed he shall, for he is compelled to do so.— (See also Comb. 220, Blackwell’s case, 1 Yern. 153, and note (1). The People v. Corporation of Albany, 11 Wend., 530 ; Attorney General v. Lock, 3 Atk., 166 ; Stumper v. Miller, id. 212 ; Newburg Township Co. v. Miller, 5 Johns. Ch., 113 ; Malcolm v. Rogers, 5 Cow., 188.) The inference deducible from the various cases on this subject seems to be, that when a public body or officer has been clothed by statute with *534 power to do an act which concerns the public interest, or the right of third persons, the execution of the power maybe insisted upon as a duty, though the phraseology of the statute be permissive merely, and not peremptory.”
It was the duty of the plaintiff town "to raise money by taxation or otherwise ” to aid in the support of the family of Inman. They have done this in some way, for they have furnished it supplies for which they claim to recover of the defendants. This they canpot do. Their only claim for reimbursement was against the State. — Veazie v. China, ante, p. 518. Exceptions overruled.
Cutting, Walton, Danforth and Barrows, JJ., concurred.