Alfred R. VANASSE

v.

Madeleine LABRECQUE

and

Richard C. Wright and Earline
S. Wright,

and

Casco Bank & Trust Company.

Supreme Judicial Court of Maine.

Dec. 21, 1977.

Preti & Flaherty by Arthur A. Peabody (orally), Portland, for plaintiff.

Marcel R. Viger (orally), Biddeford, Pinansky & Schwartz by William D. Pinansky, John F. Holder (orally), Thompson,

Willard & McNaboe by Nicholas Bull, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

Appellant Alfred R. Vanasse brought an action to set aside a sale of real estate which was accomplished by an executrix pursuant to a probate court order granting her a license to sell. The procedures leading up to sale clearly complied with all statutory requirements that are explicitly made mandatory. Proper notice by publication was given, but appellant argues that the statute and the United States Constitution required personal notice to him of the application for the license and that it was not given. He seeks to raise this argument in this collateral attack on the order of the probate court.

This controversy arose out of probate proceedings in York County to settle the estate of appellant's mother. By her will she left her one-half interest in a piece of property in that county to appellant and his sister as tenants in common. The other half interest in the property was owned by a Mrs. Rabisaukas. Appellant's sister, appellee Madeleine LaBrecque, was appointed executrix in May of 1968. Appellant, the executrix, and Mrs. Rabisauckas later discussed the possibility of selling the land. Appellant rejected an offer by his co-tenants to sell their interest to him, and he refused to authorize a proposed sale of the property to appellees Wright. Mr. Vanasse knew that probate proceedings were pending and was in contact with persons involved in the proceedings but did not usually get satisfactory responses to his inquiries.

In June, 1969, he attended and participated in a hearing on the first account filed by the executrix. At that time, he examined various documents in the court file, but he testified that he did not see a petition for a license to sell which was on file but was never acted on. In April, 1970, the executrix filed a second petition for a

license to sell real estate. The purpose of the sale was to obtain cash for payment of debts and expenses of administration, for which the personalty in the estate was insufficient. After notice by publication this petition was approved on May 12, 1970. No notice of this petition was mailed to appellant though the executrix and the court knew his address in Canada and knew that he was interested in developments in the administration of the estate.

On July 3, 1970, in response to inquiries by appellant, the register of probate wrote appellant informing him of the granting of the license. Appellant testified that he did not receive this letter during July or August because he was absent from home and did not have his mail forwarded. The property was sold pursuant to the license on August 10, 1970, to appellees Wright, who mortgaged it to appellee Casco Bank & Trust Company. The Superior Court found that in entering that transaction the Wrights and Casco Bank relied in good faith on the apparently valid order of the probate court granting the license to sell real estate. Nothing in the record suggests that the price paid for the property was inadequate. Appellant testified that he did not actually learn of the sale before October 28, 1970.

■ On appellant's view of the facts, as a person aggrieved by the May 12 order granting the license, he might have appealed the order to the Supreme Court of Probate within twenty days after his return from Canada,[1] or he could have petitioned for allowance of such an appeal any time within a year after the order on the ground of the alleged defect of notice.[2] He took no such appeal and filed no such petition. Rather, he brought this action in Superior Court to set aside the sale or to impress a trust for his benefit on the property conveyed to the defendants. The court refused to grant the relief requested because the action amounted to a collateral attack on an order that appellant could have challenged by appeal. We affirm.

■ Maine probate courts have power to grant licenses to sell real estate by virtue of 18 M.R.S.A. § 2051 (1964). Section 2052 of title 18 sets forth the notice procedures which must be followed to obtain such a license:

"No license shall be granted for the sale of any such real estate . . . unless by written consent of all persons interested therein, until after public or personal notice of the time and place of hearing to all such persons to appear and object if they see cause; but such notice, when public, may be published in a consolidated form . . . . . If any party interested resides without the State, or the real estate is situated in a county other than the county is which the proceedings are pending, such special notice may be given as the court directs."

Ordinarily, notice by publication is sufficient notice to comply with the requirements of this statute. However, the statute authorizes special notice when an interested party resides outside the state. Appellant argues that this authorization

---

1. The first paragraph of 4 M.R.S.A. § 401 (1964) provides, in part, as follows:

"The Superior Court is the supreme court of probate and has appellate jurisdiction in all matters determinable by the several judges of probate. Any person aggrieved by any order, sentence, decree or denial of such judges [with exceptions not pertinent here] may appeal therefrom to the supreme court of probate to be held within the county, if he claims his appeal within 20 days from the date of the proceeding appealed from; or if, at that time, he was beyond sea, or out of the United States and had no sufficient attorney within the State, within 20 days after his return or the appointment of such attorney."

2. 4 M.R.S.A. § 403 (1964) provides as follows:

"If any such person from accident, mistake, defect of notice or otherwise without fault on his part omits to claim or prosecute his appeal, the supreme court of probate, if justice requires a revision, may, upon reasonable terms, allow an appeal to be entered and prosecuted with the same effect as if it had been seasonably done; but not without due notice to the party adversely interested nor unless the petition therefor is filed with the clerk of said court within one year after the decision complained of was made."

amounts to a mandate that personal notice by mail be given to interested parties who reside outside the state if their address is known. He supports his statutory argument with the additional claim that such a non-resident has a constitutional right to notice by mail. He relies on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) to buttress that position.

The parties agree that the license was obtained in compliance with all expressly mandatory statutory requirements. The probate court had jurisdiction over the land in the county. Public notice was given by newspaper publication. The proceedings were valid on their face, and the Superior Court found that the Wrights and Casco Bank purchased their interests in the property in good faith reliance on that apparent validity. Appellant learned of the sale on or after October 28, 1970 but did not appeal or seek leave to appeal from the order. Rather, he mounted this collateral attack on the order.

■ A Maine statute bars collateral attack on sales pursuant to licenses to sell real estate issued by a court of competent jurisdiction. 18 M.R.S.A. § 2252 (1964) provides:

"In an action brought to contest the validity of any such sale, by the heir or others claiming under the deceased; by the wife or her heirs, in case of a sale of her estate by her husband; or by the ward or person claiming under him; no such sale shall be avoided on account of any irregularity in the proceedings, if it appears:

1. *License granted; deed executed and recorded.* That the license was granted by a court of competent jurisdiction and that the deed was duly executed and recorded;

2. *Bond and notice.* That the person licensed gave the bond and notice of the time and place of sale required by law;

3. *Premises sold as authorized; purchaser in good faith.* That the premises were sold in such manner and within such time as the license authorized and are

held by one who purchased them in good faith."

This statute is designed to protect innocent purchasers against claims based on "irregularities" in the probate court proceedings. Even if we were to regard personal notice as mandated by the license statute or the United States Constitution on these facts, the failure to give such notice did not result in the probate court's not being a "court of competent jurisdiction."

■ Appellant does not claim that the probate court lacked jurisdiction over the property within the county. Nor does he claim that the probate court lacked the general power to grant the license. Rather, relying on the ancient case of *Snow v. Russell,* 93 Me. 362, 45 A. 305 (1899), he argues that since the procedures mandated by the statute were not complied with, the probate court was not a court of competent jurisdiction as defined in that case. *Snow v. Russell* involved a sale pursuant to license which was issued after the probate court purported to waive the requirement that the executor post bond. The court found that the bond requirement was an express mandatory, nonwaivable requirement of the licensing statute, that authorizing sale without posting bond was beyond the court's power, and hence that the court's order granting the license was void and subject to collateral attack. However, the court in *Snow v. Russell* did recognize that decisions of the probate courts in matters relating to probate, within the authority conferred upon them by law, are conclusive unless appealed from; that is, they are not subject to collateral attack. *Snow v. Russell,* 93 Me. 362, 377, 45 A. 305, 309 (1899).

■ An order is not void or beyond the power of the court merely because the judge takes an erroneous view of the law. *Baltimore Steamship Co. v. Phillips,* 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927); *Clough v. Newton,* 160 Me. 301, 203 A.2d 690 (1965). Such defects must be corrected by direct review or by petition to annul presented directly to the court of origin. The notice statute in the present case appears to grant to the probate court discre-

tion in giving special notice. The court's order did not conflict with the express terms of the statute. Therefore, the court's decision to grant the license, even if erroneous, was within the authority conferred by law on probate courts.

■ A major purpose of the statutes involved in this case is to enable probate courts to settle estates with a reasonable degree of finality. The procedure for correcting errors afforded by sections 401 and 403 of title 4, must be followed within the limits of time prescribed in those statutes in order that purchasers in good faith, like the respondents here, may be secure, at least after those time limits are passed, in the titles they acquire through orders of the probate court.

Appellant argues that the licensing order of the probate court was invalid because issued after a proceeding of which he was not properly notified under the rule in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).[3] He seeks to set aside the order on this ground in spite of the fact that the land in question was transferred to good faith purchasers for fair value who relied on the apparent regularity of the probate proceedings. Neither *Mullane* nor any of the later cases applying the *Mullane* rule have gone so far as to hold that an asserted

deficiency in notice will justify invalidating such a sale on collateral attack.[4]

■ We do not find it necessary in this case to decide whether the *Mullane* rule is applicable to the procedure under which the realty in question was sold. We hold that where innocent purchasers have acquired a decedent's land for fair value from an executrix who has acted, to all appearances from the public records, in accordance with a valid license to sell issued by a court with jurisdiction over the land, after all express statutory requirements have been observed, the heir or devisee who claims an interest in the land may not have the sale invalidated in a collateral action.

■ Appellant learned of the sale in October of 1970, but he did not appeal to the supreme court of probate pursuant to 4 M.R.S.A. section 401 or 403. Under these circumstances he cannot attack the probate court's interpretation of the law in an action in Superior Court to set aside the sale.

On the facts of this case, we are not required to determine whether a direct attack by appellant under section 401 or 403 of title 18 would have succeeded, and we intimate no opinion on that question.

The entry is:

Appeal denied.

Judgment affirmed.

---

3. The principle applied by the Supreme Court in *Mullane* is that due process of law generally requires notice reasonably calculated under the circumstances to apprise interested parties of the action and afford them an opportunity to present their objections. Specifically, *Mullane* held that notice by newspaper publication is not enough with regard to a person whose name and address are known and whose legally protected interests are directly affected by the proceeding. The Supreme Court has applied the *Mullane* rule in condemnation proceedings (*Walker v. City of Hutchinson*, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956); *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962)); tax lien foreclosures (*Covey v. Town of Somers*, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956)); notices to file claims in bankruptcy (*City of New York v. New York, N.H. & H.R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1952)); and proceedings to forfeit a get-away automobile as contraband (*Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34

L.Ed.2d 47 (1972)). The question of possible application of the *Mullane* rule has been presented to the Maine Supreme Judicial Court in a number of cases. *See, e. g., Michaud v. City of Bangor*, 159 Me. 491, 196 A.2d 106 (1963); *City of Auburn v. Mandarelli*, Me., 320 A.2d 22 (1974); *Pool Beach Ass'n v. City of Biddeford*, Me., 328 A.2d 131 (1974).

The Supreme Court has not yet had occasion to decide whether the *Mullane* rule should be regarded as modifying its earlier decisions upholding probate proceedings based on notice by publication. *See Farrell v. O'Brien*, 199 U.S. 89, 25 S.Ct. 727, 50 L.Ed. 101 (1905) (upholding probate in common form followed by a one-year period for possible will contest). See Comment, *Probate Proceedings—Administration of Decedents' Estates—The Mullane Case and Due Process of Law*, 50 Mich.L.Rev. 124 (1951).

4. *See Schroeder v. City of New York, supra* n.3, 371 U.S. at 211 n.5, 83 S.Ct. at 281.

POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ., concurring.

DUFRESNE, A. R. J., dissenting.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has dissented as Active Retired Justice.

DUFRESNE, Active Retired Justice (dissenting).

The record discloses that the defendant executrix did not press her initial petition for the sale of the Kennebunkport real estate to pay the debts of the deceased, funeral charges and expenses of sale and administration filed with the Probate Court (York County) and dated February 14, 1969. By decree of September 24, 1969, the Judge of Probate allowed her first account which showed that the funeral expenses, the expenses of last sickness and other debts of the deceased, all in the amount of $4895.80 had been paid, leaving a balance of personal property in the amount of $295.14.

The testatrix owned a half interest in the Kennebunkport property and by her will devised the same to the plaintiff and the appellant in equal shares as tenants in common. The homestead, situated in Saco, together with an extra parcel of land in Kennebunkport, she devised to the defendant, Madeleine LaBrecque, in trust for the decedent's four grandchildren, two of whom were the children of the defendant La-Brecque and the other two, the children of the appellant Vanasse. The executrix' second petition for the sale of the Kennebunkport real estate, dated April 16, 1970, seems to be a rerun of the first petition. Indeed, she charges herself with personal estate to the value of $5,056.94, although her first account indicates a balance on hand of only $295.14. Also, her petition alleges that the personal estate is insufficient to pay the debts of the deceased, funeral charges, legacies etc., even though all these obligations had been discharged previously.

In both petitions the executrix was proceeding pursuant to 18 M.R.S.A., § 2202 on the ground that an advantageous offer of ten thousand ($10,000.00) dollars had been made for the property and that the interest of all concerned will be promoted by an acceptance of said offer. After public notice given pursuant to the order of court, the Judge of Probate on May 12, 1970 licensed the defendant executrix to sell at private sale for not less than ten thousand ($10,000.00) dollars, provided before proceeding to make such sale she gave bond with sufficient sureties in the amount of fifteen thousand ($15,000.00) dollars, accounted with the Judge of Probate for the proceeds of said sale and returned within thirty days thereafter an affidavit of the sale into the Registry of Probate.

The plaintiff is a resident of Canada. His home address was known to the executrix and the Court, but no personal notice of the petition for sale was given to the plaintiff. The record shows that Mr. Vanasse on May 31, 1970, which was some time after the license to sell had been granted, was trying to find out what, if anything, had happened since the first account had been approved. His letter to the Register of Probate advised that he intended to be present at the next hearing, and that, since he was not to be at home between July 1 and September 1, 1970, any hearing should be scheduled prior to his departure. Notwithstanding the plaintiff's notice to the Register that he would not be at his home address in July and August, the Register's attempted response to advise him that a license to sell had already been approved was not mailed until July 3, 1970. This letter was never received. The sale took place on August 10, 1970, but Mr. Vanasse was apprised of that fact only on October 28, 1970, when he received a copy of the executrix' second and final account.

The plaintiff's complaint dated January 26, 1971 seeks to have the executrix' sale to the defendant Wrights declared invalid or to have said real estate impressed with a trust in his favor to the extent of a one fourth interest therein, or such further relief as the nature of this case may require.

The Superior Court Justice found as fact as follows:

"The Court is satisfied that LaBrecque had no desire to insure that Vanasse in fact received notice of her petition, and that she would do only what was required by 18 M.R.S.A. 2052, or by the Probate Court to give such notice. The Court is also satisfied that Vanasse had no desire to cooperate in the administration of the estate or the sale of real estate. No facts were established which would show Vanasse had actual or constructive notice or knowledge of the particular petition granted on May 12, 1970, or of the date by which he must act to oppose it. He was, however, aware generally of LaBrecque's purpose to sell the property."

He ruled, however, that

"[a]ny delay in the receipt of such specific knowledge after the normal delivery date of the Register's letter of July 3, 1970 [failure to leave a forwarding address], must be the responsibility of Vanasse.

"By his complaint and in his brief, Vanasse asserts that (1) 18 M.R.S.A. 2052 as applied in this case is unconstitutional or (2) 18 M.R.S.A. 2052 should be interpreted as requiring the Probate Court to order appropriate personal notice to him of the hearing on the petition. Otherwise, says Vanasse, he has been deprived of his interest in the Goose Rocks property without due process. The Court must reject his contentions and deny the relief requested.

"18 M.R.S.A. 2252 established the requisites for a valid sale as against persons claiming under the deceased. These requisites are all clearly established by the evidence presented herein. In particular, the good faith of the Wrights and Casco cannot be questioned.

"What of the alleged insufficiency of notice to Vanasse? It must be noted that by this action he attempts to collaterally attack the license to sell. Appellate jurisdiction in regard to the grant of the license to sell is vested in the Supreme Court of Probate. Deficiencies in the notice of hearing, or notice of the action of the Probate Court, should, and, by virtue of 4 M.R.S.A. 403, could have been addressed to the Supreme Court of Probate even after the time period provided by 4 M.R.S.A. 401. Failure to avail himself of these statutory procedures is fatal to Vanasse's present collateral attack."

With due respect to my colleagues in their affirmance of the judgment below in favor of the defendants, I must dissent.

Even though 18 M.R.S.A. § 2202 regulating the sale of real estate of decedents for the purpose of accepting an advantageous offer provides that

"[t]he court shall decide what notice, if any, shall be given of such sale and, if any is required, it shall be inserted in the license and given accordingly,"

it is subject to the requirements of 18 M.R.S.A., § 2052, which mandates that

"[i]f any party interested resides without the State . . . such special notice may be given as the court directs."

The statutory phraseology—the court shall decide *what notice,* if any, shall be given of such sale—came about through the 1883 revision of the statutes (R.S. 1883, c. 71, s. 12) which merely condensed the previous legislation (R.S. 1857, c. 71, s. 13) which read:

"and the court shall decide what *public* notice, if any, shall be given of the time and place of such private sale . . ." (Emphasis supplied)

In ascertaining the meaning of any section or clause, resort should be had to the original statute from which it was condensed, as mere condensation and change of phraseology in revision do not necessarily nor presumptively indicate a purposeful deviation in legislative intendment. *Hughes v. Farrar,* 45 Me. 72 (1858); *Cummings v. Everett,* 82 Me. 260, 264, 265, 19 A. 456 (1890); *Inhabitants of St. George v. Rockland,* 89 Me. 43, 35 A. 1033 (1896); *Stevens v. Dixfield and Mexico Bridge Company,* 115 Me. 402, 99 A. 94 (1916); *Cram v. Inhabitants of County of Cumberland,* 148 Me. 515, 96 A.2d 839 (1953).

The 1883 revision kept intact the requirement that licenses to sell at private sale or to accept an advantageous offer could be

granted in all cases where the courts may license to sell at auction and the same prerequisites as for a sale at auction were restated in the revision. The omission of the word "public" from the clause—the court shall decide what *public* notice, if any, shall be given of such sale—was not intended to make a radical change in the law itself, but was only made to achieve greater conciseness or simplicity of language.

In construing statutes we said that "in order to perceive true legislative intent in relation to any particular section of a statute, consideration must be given to the whole system of which the section at issue forms a part and all legislation on the same subject matter must be viewed in its overall entirety so that an harmonious result presumably intended by the Legislature may be reached." *In Re Belgrade Shores, Inc.,* Me., 359 A.2d 59, 61 (1976); *Finks v. Maine State Highway Commission,* Me., 328 A.2d 791, 795 (1974). This is especially so, where one section (such as 18 M.R.S.A., § 2202) is of particular application and the other (18 M.R.S.A., § 2052) is of general import. *Small v. Gartley,* Me., 363 A.2d 724, 728 (1976).

Therefore, 18 M.R.S.A., § 2202 must be read as if it expressly contained that part of 18 M.R.S.A., § 2052, which states that

"[i]f any party interested resides without the State . . ., such special notice may be given as the court directs."

The issue, thus, becomes, whether public notice as was ordered and given in the instant case was sufficient under the statute. The answer must be in the negative.

It is contended that the statute is permissive in its terms and not mandatory, so that the giving of the special notice is discretionary with the court. That the form which

the special notice may take is discretionary with the court, such may not be disputed. But, where a statute directs the doing of a thing for the sake of justice in the protection of private rights or where public interests or rights are concerned, the legislative act must be construed as obligatory, even though it speaks in terms permissive in nature. The word "may" in such an instance must be read as "must," which is the sense in which the Legislature used the term. *Inhabitants of Milford v. Inhabitants of Orono,* 50 Me. 529 (1864); *Low v. Dunham,* 61 Me. 566 (1872); *Collins v. State,* 161 Me. 445, 213 A.2d 835 (1965). Legislative intent is the controlling factor, but it is unrealistic to conceive that the Legislature would provide for the giving of special notice to nonresidents of the State in the case of the sale of their properties at the order of the probate court and at the same time invest that court with the power of ignoring the legislation at its pleasure.[1]

This conclusion is consistent with the decisions of this Court in *Michaud v. City of Bangor,* 159 Me. 491, 196 A.2d 106 (1963) and *Pool Beach Association v. City of Biddeford,* Me., 328 A.2d 131 (1974), where the statutes respectively involved were construed as requiring personal notice to the owners of property to avoid a constitutional "due process" violation. As stated in *Schroeder v. City of New York,* 371 U.S. 208, 212, 213, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962):

"The general rule that emerges from the *Mullane* case [*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)] is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests

1. We note that 18 M.R.S.A., § 2052 provides that *"special notice"* be given to interested parties who reside without the State; such articulate phraseology would seem to indicate a specific legislative concern beyond the scope of the general statute regulating probate notices. 18 M.R.S.A., § 201 prescribes: "In laws relating to probate courts and proceedings, the words 'public notice' denote notice published 2 weeks successively in a newspaper published

in the county whose court has jurisdiction, or in which the deceased last dwelt, as ordered by the judge or, if none, in the state paper; the words 'Personal notice' denote service by a copy given in hand or left at the place of last and usual abode, 7 days at least before the time of hearing; and the words 'due notice' denote public or personal notice, at the discretion of the judge."

are directly affected by the proceedings in question.

" 'Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.' "

In construing a statute that is susceptible of two interpretations, one of which would render the statute unconstitutional, while the other would not, the latter interpretation should be adopted, unless the legislative terminology absolutely forbids the same. *State v. Intoxicating Liquors*, 80 Me. 57, 12 A. 794 (1888); *Hamilton v. Portland Pier Site District*, 120 Me. 15, 112 A. 836 (1921); *Stubbs, Appellant*, 141 Me. 143, 39 A.2d 853 (1944).

Moreover, the special notice which is expressly required by the statute could have been ordered by the Probate Court in similar form as appears in Rule 4(f) of our Rules of Civil Procedure. Due process required as much.

We said in *City of Auburn v. Mandarelli*, Me., 320 A.2d 22, at 29 (1974):

"Notice and opportunity for hearing are of the essence of due process of law. [citations omitted]

"The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect. What is due process in specific procedures affecting property interests must be determined by taking into account the purposes of the procedures themselves and their effect upon the rights asserted <u>and all other circumstances which may render</u> the devised process appropriate to the nature of the case." (Underscoring in original)

As in the case of petitions for the probate of a will, devisees of a testate person's real estate, being parties interested in a petition to sell the same for the payment of the debts of the deceased and expenses of administration, have an absolute and unqualified right to expect that legal notice of the return day of the petition will be given. Notice and hearing are fundamental. See *Knapp, Appellant*, 145 Me. 189, 195, 74 A.2d 217, 220 (1950).

The legal title to devised real estate vests in the devisees, when the will becomes operative, that is, after it has been proved and allowed by the court having jurisdiction for that purpose, i. e. the probate court or, if an appeal is properly perfected or allowed, the supreme court of probate. See *Cousens v. Advent Church*, 93 Me. 292, 45 A. 43 (1899); *Martin, Appellant*, 133 Me. 422, 179 A. 655 (1935). But the title of the devisees, following the establishment of the will, relates back to the time of the death of the testate decedent. *Gray v. Hutchins*, 150 Me. 96, 101, 104 A.2d 423 (1954); *Wright v. Williamson*, 67 Me. 524 (1877); *Spring v. Parkman*, 12 Me. 127 (1835).

Where the will provides that its testamentary dispositions are subject to the payment of the decedent's just debts, funeral charges and expenses of administration, as in the instant case, such obligations are a charge on the real property of the decedent (*Bragdon v. Smith*, 136 Me. 474, 12 A.2d 665 (1940)), except where the testator expressly or impliedly has provided otherwise, considering, however, that "no part of the estate can be exempted from liability for payment of debts if required therefor" as provided in 18 M.R.S.A., § 1854. *Hill v. Treat*, 67 Me. 501 (1877).

Pursuant to 18 M.R.S.A., § 2051, (1) and (3) judges of probate who have jurisdiction of the estate may license the sale of real estate and any interests therein on application of executors for power to sell so much of such estate of the deceased as is necessary to pay debts, funeral charges, legacies, expenses of sale and administration and for the erection of a suitable marker or gravestone, and to sell the whole for such purposes, if a partial sale would greatly depreciate the residue. These same limitations are applicable to the licensing of executors for the purpose of accepting an advantageous offer pursuant to 18 M.R.S.A., § 2202. *Snow, Appellant*, 96 Me. 570, 53 A. 116 (1902).

Our approach to the resolution of the issue presented in this case should take into consideration what this Court said in *Taber v. Douglass,* 101 Me. 363, 64 A. 653 (1906):

"[C]ourts of probate are wholly creatures of the legislature and are tribunals of special and limited jurisdiction only. It is true that when its proceedings have all been regular with respect to any matter within the authority conferred upon it by law, the decrees of the Probate Court when not appealed from are conclusive upon all persons, and cannot be collaterally impeached. It is equally well settled in this state that jurisdiction of the subject-matter alone is not sufficient to establish the validity of its decree. If the preliminary requisites and the course of proceedings prescribed by law are not complied with, jurisdiction does not attach and the decree will be, not voidable merely, but void. The petition to this court is the foundation upon which to base its jurisdiction and it must allege sufficient facts to show the authority and power of the court to make the decree prayed for. The record of its proceedings must show its jurisdiction."

To the same effect, see *In Re Will of Edwards,* 161 Me. 141, 210 A.2d 17 (1965) and cases cited therein.

The power of the probate court to sell real estate in the course of the administration of estates of decedents is similarly limited and special in nature and governed by the same rules which sanction collateral attacks upon probate court decrees when void for want of jurisdiction under the enabling statutes. This Court in *Snow v. Russell,* 93 Me. 362, at 376, 45 A. 305 (1899) quoted with approval from *Smith v. Rice,* 11 Tyng 507 (decided in 1814, while we were a part of Massachusetts) the following excerpt:

"But if it appear that the judge of probate exceeded his authority, or that he has undertaken to determine the rights of parties over whom he had no jurisdiction, . . . or that he has proceeded in a course expressly prohibited by law, in all such cases, the party aggrieved, if without any laches on his part he has had no opportunity to appeal, may consider the act or decree void. . . . The defect is not confined to what may be considered strictly a want of jurisdiction of the cause; but if the inferior tribunal proceed in a manner prohibited, or not authorized by law, the proceeding is void."

As pointed out in *Clough v. Newton,* 160 Me. 301, 203 A.2d 690 (1964), void decrees may be attacked directly by appeal or by petition to annul presented to the probate court directly, even though the time for appeal has expired, or they may be attacked collaterally. We do note the reaffirmation of the *Clough* doctrine in the case of *In Re Merriam,* Me., 241 A.2d 602 (1968), wherein probate court decrees, from which no appeal has been taken and upon which parties have relied in good faith, were deemed subject to direct or collateral attack for fraud or "other compelling cause," such as lack of jurisdiction of the court or the exercise by the court of power unauthorized by law.

If it appears on the face of the proceedings that the probate court has acted in a manner prohibited or not authorized by law, its orders and decrees are absolutely void, may be treated as a nullity and attacked collaterally. *In Re Estate of Bettis,* 133 Vt. 310, 340 A.2d 57 (1975); *Smith v. Rice,* 11 Tyng 507, 513 (Mass.1814).

In order for the probate court to have jurisdiction and authority to act, not only must there be compliance with all the requirements prescribed by law and jurisdiction over the subject matter or cause, but, as the term is used in its strictly appropriate sense, there must also be jurisdiction over the parties. *Thompson, Appellant,* 116 Me. 473, 476, 102 A. 303 (1917).

The appellees seek to justify the ruling below by reason of 18 M.R.S.A. § 2252 which provides in pertinent part as follows:

"In an action brought to contest the validity of any such sale, by the heir or others claiming under the deceased; . . . no such sale shall be avoided on account of any irregularity in the proceedings, if it appears:

1. . . . That the license was granted by a court of competent jurisdiction

and that the deed was duly executed and recorded;

2. . . . That the person licensed gave the bond and notice of the time and place of sale required by law;

3. . . . That the premises were sold in such manner and within such time as the license authorized and are held by one who purchased them in good faith."

The applicability of this statute will depend upon the interpretation to be given to the first prerequisite that the license was granted by a court of *competent jurisdiction,* since the other statutory requirements are conceded. It has been said that the true meaning of any statutory clause is that which best accords with the subject and general purpose of the statute. *In Re George W. Jewett & Son, Inc.,* Me., 261 A.2d 421, 425 (1970). But some flexibility is essential in the proper construction of statutes in order to ascertain legislative intent which must control. *In Re McLay,* 133 Me. 175, 177, 175 A. 348 (1934); *Acheson v. Johnson,* 147 Me. 275, 280, 86 A.2d 628 (1952). Words which have acquired a meaning through judicial definition are construed in accordance therewith. *Hathorn v. Robinson,* 96 Me. 33, 51 A. 236 (1901).

In *West Cove Grain Company v. Bartley,* 105 Me. 293, 74 A. 730 (1909) this Court has defined legal jurisdiction in the following terms:

"There are three essentials to legal jurisdiction. First, the court must have cognizance of the class of cases to which the one to be heard belongs, or in other words jurisdiction of the subject-matter; second, the proper parties must be present, or power be had to compel their attendance, or, in other words jurisdiction of the parties; third, there must be authority to decide in substance and effect."

"Jurisdiction of the subject-matter is conferred by the law which organizes the tribunal, and jurisdiction of the person is the power ordinarily obtained by the service of summons or other proper notice, or by an appearance."

To the same effect, see *City of Rockland v. Hurricane Isle,* 106 Me. 169, 76 A. 286 (1909).

"Jurisdiction is the power in a court to hear and determine the cause of action presented to it. Jurisdiction must exist in three particulars: the subject matter of the cause, the parties, and the process." *Mazzei v. Cantales,* 142 Conn. 173, 112 A.2d 205 (1955).

"In the judicial sense jurisdiction has been defined to be the right to adjudicate concerning the subject matter in the given case. To constitute this there are three essentials: (1) the court must have cognizance of the class of cases to which the one to be adjudicated belongs; (2) the proper parties must be present, and (3) the point to be decided must be, in substance and effect, within the issue." *Petersen v. Falzarano,* 6 N.J. 447, 79 A.2d 50, 53 (1951).

In the instant case, public notice was tantamount to no notice at all, because such notice did not meet the requirements of 18 M.R.S.A., § 2052 which mandated a special notice to any party in interest residing without the State. The issue becomes, whether the probate court which granted the license to sell the plaintiff's real estate was, in such circumstances, a court of competent jurisdiction within the intendment of 18 M.R.S.A., § 2252(1). The answer must be in the negative.

There is authority, however, to the effect that the terminology—a court of competent jurisdiction—in such a statute was merely intended by the Legislature to mean that the court issuing the license to sell was the appropriate forum where the particular application for the sale could properly be granted under the law, and that neither the failure to give notice of the application for a license to sell, nor a defective petition, will render the proceedings void under such a curative statute. *Huberman v. Evans,* 46 Neb. 784, 65 N.W. 1045 (1896) (no description of the land in the petition); see also *Montour v. Purdy,* 11 Minn. 384, 11 Gil. 278 (1865–66); *Howard v. Moore,* 2 Mich. 226 (1851); *Reynolds v. Schmidt,* 20 Wis. 394 (1866). These cases were all decided at a time when the due process clause had not

been refined to the extent it now has, and they are not persuasive in relation to the application of our curative statute where the defect consists in the failure to obtain jurisdiction of the devisee-owner of the property in relation to the proceedings for the license to sell the same.

Our Court has rejected such a broad interpretation of our curative statute. How else explain the fine distinction made by this Court in *Snow v. Russell,* 93 Me. 362, 45 A. 305 (1899) when it stated:

"We think some confusion may have arisen in the use of the word 'jurisdiction' in the decisions. It is frequently said that the decrees of probate courts, touching matters *within their jurisdiction,* when not appealed from, are conclusive upon all persons. . . . And hence it may have been concluded that, inasmuch as the licensing of sales of real estate is within the jurisdiction of the probate court, therefore all its decrees relative thereto are conclusive. But we think this conclusion is not the correct one. The rule is stated more precisely and accurately in *Waters v. Stickney,* 12 Allen, 1, where it is said that 'decrees of probate courts in matters of probate, *within the authority conferred upon them by law,* are conclusive.' " (Emphasis in original—citations omitted)

How else explain its approval of the following excerpt from *Smith v. Rice,* 11 Tyng 507, 513 (Mass.1814).

"But if it appear that the judge of probate exceeded his authority, *or that he has undertaken to determine rights of parties over whom he had no jurisdiction,* . . . or that he has proceeded in a course expressly prohibited by law, in all such cases, the party aggrieved, if without any laches on his part he has had no opportunity to appeal, may consider the act or decree void. . . . The defect is not confined to what may be considered strictly a want of jurisdiction of the cause; but if the inferior tribunal proceed in a manner prohibited, or not authorized by law, the proceeding is void." (Emphasis provided)

Be it only dictum in that case, if you will, still it reveals that the *Snow* Court headed by Chief Justice John A. Peters was applying the rule of strict construction in relation to the use of the term "jurisdiction" when applied to decrees of the probate court, notwithstanding the existing curative legislation with which the Court was familiar.

Indeed, in *Tracy v. Roberts,* 88 Me. 310, 34 A. 68 (1896), the same Court pointed out that under our curative statute there should at least be a petition before the probate court alleging sufficient facts "to give the court jurisdiction and power to authorize the sale," that "[n]othing is to be presumed in favor of the right to divest an heir of his title," that "[t]he authority to do so is derived wholly from the statute, and its provisions must be strictly complied with," and that "[a] fortiori, where there is neither petition nor license, as well as no bond or notice of sale, and no oath, all of which are required by statute [,t]he court had no jurisdiction."

Thus, where in the instant case title to the Kennebunkport property had already vested in the plaintiff, albeit in part only, as devisee of Isabelle B. Vanasse and the probate court undertook to divest the plaintiff of his rights therein in a proceeding instituted by the executrix seeking authority to sell such real estate to accept what purported to be an advantageous offer pursuant to 18 M.R.S.A., § 2202, the court's decree licensing the sale without the special notice to the plaintiff mandated by 18 M.R. S.A., § 2052, could be attacked collaterally as a nullity, provided no laches or equitable estoppel barred such a course.

It may be conceded that the purpose of the statute is to lend more stability to probate court decrees affecting titles to property or rights therein dependent upon them and to give some degree of protection to purchasers in good faith from guardians, executors and administrators by foreclosing collateral attacks in favor of direct challenges on account of irregularities in the proceedings of sale. Whilst the law extends protective relief to bona fide purchasers at these sales under probate court li-

censes against irregularities in the course of the proceedings, still it should also protect owners from being deprived of their property by proceedings unauthorized by law or in violation of due process requirements. Parties having an interest in property should be given the statutory notice and an opportunity to be heard before executors are permitted to sell their property. The Legislature must be deemed to have used the terminology—court of competent jurisdiction—in its strict meaning of jurisdiction of the subject matter and of the person, so that the rights of both purchasers and owners be properly promoted. The law presumes that a purchaser inspects the public records, through which title must be derived, before he receives a conveyance. If he did so in this case, then, he should have seen that the decree of court was unwarranted for want of the statutory special notice, and that a sale under the court's decree could pass no title. If he failed to make an examination of the records which, as in this case, would have disclosed no jurisdiction over the person of the plaintiff and the nullity of the proceedings, it is his own fault and he should suffer the consequences of his negligence.

In *Thayer v. Winchester,* 133 Mass. 447 (1882), the Massachusetts Court said that

"[w]here a court is of special and limited jurisdiction, the facts essential to that jurisdiction must exist. To hold that, because, under certain circumstances or upon a certain state of facts, the Probate Court had jurisdiction to authorize the sale of real estate, it was a competent court when they did not exist, would be to treat what are sometimes termed jurisdictional facts as unimportant." The Court further said that the treatment to be given the curative statutes was "as indicating only that a license by the Probate Court to sell real estate was not to be held void by reason of anything which affected only the mode of proceeding, and not as sanctioning or ratifying acts or decrees which were without authority."

To the same effect, see *Hannum v. Day,* 105 Mass. 33 (1870); *Tarbell v. Parker,* 106 Mass. 347 (1871).

In *Lamont v. Vinger,* 61 Mont. 530, 202 P. 769 (1921), the Court held, notwithstanding a curative statute which mandated the disregard of any irregularities or defects in making or conducting sales by executors, administrators or guardians, that such a sale was void and the judgment of the probate court in relation thereto was subject to collateral attack, where no satisfactory proof of service of the petition for sale was presented to the court. The Court viewed the proceedings as quasi in rem only and, without satisfactory proof of substantial compliance with the statutory requirements of notice to the parties interested, the probate court was without authority to hear the petition or take any action with reference to it.

In *Babbitt v. Doe,* 4 Ind. 355 (1853), in construing a similar curative statute as our Maine statute, the Indiana Court had this to say:

"It is insisted that these requisitions have, in this case, been complied with; that the first contemplates a sale directed by a Court having jurisdiction of the subject-matter, and not of the parties. This is not a proper construction of the statute. The terms, 'competent jurisdiction,' in their usual signification, embrace the person as well as the cause. The legislature could not have intended to empower courts to direct a sale which would divest an individual of title to property without the proper notice of suit."

As an interested party to the executrix' petition for the sale of the Kennebunkport property in which he had a vested interest, the plaintiff had an absolute and unqualified right to expect that a special notice of the return day of the petition would be given him, which special notice the statute requires and due process mandates. Notice and opportunity for hearing is fundamental. See *Roy C. Knapp, Appellant,* 145 Me. 189, 195, 74 A.2d 217 (1950). Since the probate court was not a court of competent jurisdiction within the meaning of 18 M.R.S.A., § 2252 for want of jurisdiction over the

plaintiff in relation to the sale of the Kennebunkport property to pay debts of the estate and accept an advantageous offer for that purpose and since the probate court was not empowered for that same reason to authorize the sale of said property, the proceedings were a nullity and a collateral attack upon the probate court decree to that effect could be mounted and the Court below was in error when the plaintiff's complaint was dismissed.

The record is silent respecting any change in position by the defendant Wrights between October 28, 1970 when Mr. Vanasse first learned of the sale of the property and February 3, 1971 when the plaintiff's complaint was served on the Wrights. Thus, the record as made would not support any defense of laches or estoppel. The defendant Wrights and the mortgagee Bank are not without remedy as on a new trial relief might be granted, if necessary, on their counterclaim, upon which no opinion is herein intimated or, at the very least on an independent action upon the executrix' bond.

The entry should be: appeal sustained; judgment set aside; case remanded to the Superior Court for a new trial consistent with this opinion.